JOHN L. LOVELADY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lovelady v. Commissioner
Docket No. 4249-88
United States Tax Court
T.C. Memo 1988-533; 1988 Tax Ct. Memo LEXIS 561; 56 T.C.M. (CCH) 689; T.C.M. (RIA) 88533; November 16, 1988
John L. Lovelady, pro se. Andrew J. Dempsey, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioner's Federal income tax liabilities for 1983, 1984, and 1985 in the respective amounts of $ 5,132, $ 12,908, and $ 13,794. Respondent did not determine any negligence additions to tax against petitioner. At trial, however, respondent moved for the award of damages to the United States and against petitioner under section 6673. [1] The issues in this case are whether petitioner, during the years in issue, established a tax home and a bona fide residence outside the United States *563 for purposes of the section 911 foreign earned income exclusion. FINDINGS OF FACT Many of the facts have been stipulated and are so found. Petitioner John L. Lovelady and his wife Catherine filed a joint Federal income tax return for 1983. Petitioner filed separate Federal income tax returns for 1984 and 1985. Throughout 1983, 1984, and 1985, petitioner was employed by Penrod Drilling Company ("Penrod") as a senior electrician on an offshore oil rig located in the territorial waters of the Netherlands. Petitioner's work schedule consisted of alternating 14-day periods of on and off duty. Petitioner would travel from his family's residence in Arkansas to the Netherlands and from there by boat or helicopter to the oil rig for a continuous work period of 14 days. Upon completion of each 14 days on the oil rig, petitioner would return to his family in Arkansas for a 14-day rest period. Penrod paid all expenses of petitioner's travel between Arkansas and the oil rig, and Penrod provided petitioner's food and lodging while on the oil rig. *564 Penrod also paid petitioner a 25-percent bonus for working outside the United States. Petitioner did not pay income taxes to the Netherlands. As explained, petitioner's family resided in Arkansas in a house owned by petitioner. Petitioner's family never visited the oil rig. Petitioner maintained bank and credit card accounts in Arkansas, not in the Netherlands. Petitioner had an Arkansas, not a Netherlands' drivers license. OPINION The facts and applicable law of this case are essentially identical to those found in Lemay v. Commissioner,T.C. Memo. 1987-256, affd. 837 F.2d 681 (5th Cir. 1988). We paraphrase herein our discussion of the law as set forth in Lemay v. Commissioner, supra.
During the years in issue, section 911 allowed a "qualified individual" to exclude specified amounts of foreign earned income from gross income. A "qualified individual" is defined in section 911(d)(1) [2] as one who has a "tax home" in a foreign country and who (1) as a citizen of the United States, establishes to the satisfaction of the Secretary that he has been a "bona fide resident" of a foreign country for an uninterrupted period which *565 includes an entire taxable year, or (2) as a citizen or resident of the United States, has been physically present in a foreign country for at least 330 days during the taxable year. Sec. 911(d)(1)(A) and (B); sec. 1.911-2(a), Income Tax Regs. Petitioner concedes that he does not meet the "physical presence" test of section 911(d)(1)(B). Petitioner, however, argues that he maintained a tax home in the Netherlands in 1983, 1984, and 1985 and that he was a bona fide resident of the Netherlands for all of 1983, 1984, and 1985. The term "tax home" is defined in section 911(d)(3), as *566 follows: (3) Tax home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States.
Section 1.911-2(b), Income Tax Regs., elaborates on the definition of "tax home" and its relationship to the taxpayer's "abode" as follows: (b) Tax home. * * * An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States. Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States. We recently addressed the meaning of the word "abode" within the context of section 911(d)(3) in Bujol v. Commissioner,T.C. Memo. 1987-230 (53 T.C.M. 762, 763-764; *567 56 P-H Memo T.C. par. 87,230 at 87-1217), affd. without published opinion 842 F.2d 328 (5th Cir. 1988), as follows: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Fn. ref. omitted.]
The taxpayer in Bujol v. Commissioner, supra, also was an employee of Penrod. He worked alternating 28-day periods on an offshore oil rig in foreign territorial waters, returning to his residence in Louisiana for 28-day rest periods. We held in Bujol that due to the taxpayer's strong economic, familial, and personal ties to Louisiana, his "abode" for purposes of section 911 was in the United States. We thus concluded that the taxpayer did not qualify for the foreign earned income exclusion of section 911. Petitioner emphasizes that section 1.911-2(b), Income *568 Tax Regs., provides that the maintenance of a dwelling in the United States, whether or not the dwelling is used by the taxpayer's spouse and dependents, does not necessarily mean that the taxpayer's abode is in the United States. In the instant case, however, petitioner did not merely maintain a dwelling in the United States. As in Bujol v. Commissioner, supra, petitioner had strong economic, familial, and personal ties to his family residence in the United States. Petitioner was a resident and domiciliary of Arkansas. He spent approximately one-half of his time in Arkansas with his wife and children, and he returned to Arkansas upon completion of each 14-day work period. On the facts and circumstances before us, we hold that petitioner's abode was in the United States during the years in issue. Because petitioner's abode remained in the United States at all times during 1983, 1984, and 1985, he is ineligible for the section 911 foreign earned income exclusion. For other cases reaching the same result on similar facts, see Steel v. Commissioner,T.C. Memo. 1988-399; Whitesell v. Commissioner,T.C. Memo. 1988-398; Miller v. Commissioner,T.C. Memo. 1987-397. *569 With regard to respondent's motion for damages under section 6673, petitioner argues that he and other similarly situated offshore rig operators relied on Publication 54, Tax Guide for U.S. Citizens and Resident Aliens Abroad, as the basis for claiming a foreign residence and for pursuing this lawsuit in the face of the recent adverse decisions. Certain relevant language in Publication 54 is not a model of clarity and a revision thereof would be appropriate. [3] Even in its present form, however, we do not read Publication 54 as supporting petitioner's position. Three questions are posed in the publication as particularly relevant to the determination of a taxpayer's abode, as follows: 1) Did you use your home in the United States as a residence while you worked at your job in the United States just before going abroad to your new job, and did you continue to maintain work contacts (job seeking, leave of absence, on-going business, etc.) in that area in the United States during the time you worked abroad? 2) Are your living expenses duplicated at the U.S. and foreign homes because your work requires you to be away from your U.S. home? 3) Do you have a family member or members *570 continuing to live at you U.S. home, or do you frequently use your U.S. home for lodging during the period you work abroad? As per the explanation in Publication 54, in order to be regarded as having a foreign abode or residence, a taxpayer would have to be able to answer "no" to at least two of these questions. Petitioner herein would have to answer "yes" to at least two of the questions. With regard to question No. 1, petitioner continued to conduct business in Arkansas (bank accounts, taxes, voting, etc.), and he spent all of his leave time in Arkansas. With regard to question No. 2, petitioner's living expenses were not duplicated. He had only one set of living expenses, and they were incurred in Arkansas. Petitioner essentially had no foreign living expenses because Penrod paid all of petitioner's expenses on the oil rig. With regard to question No. 3, petitioner's family members resided in Arkansas. Thus, under the test as set forth in Publication 54, petitioner would *571 not be regarded as having a foreign abode. See also Carpenter v. United States,495 F.2d 175, 184 (5th Cir. 1974), regarding the nonbinding effect of Publication 54. Exercising our discretion in this case, we decline to award damages under section 6673. Other similarly situated taxpayers should be advised that further litigation in this Court of this issue may well result in section 6673 damages being awarded to the United States. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
2. Sec. 911(d) provides in part, as follows: (1) Qualified individual. -- The term "qualified individual" means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. ↩
3. All editions of Publication 54, Tax Guide for U.S. Citizens and Resident Aliens Abroad, from 1983 through the present time contain the same language petitioner complains of in the instant case. ↩