MARTHA P. MURPHY AND LANDRY MURPHY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15427-86.     Filed January 10, 1989.

Martha P. Murphy and Landry Murphy, pro se.
*Joseph Ineich,* for the respondent.

JACOBS, *Judge:* Respondent determined a deficiency in the amount of $1,077 in petitioners' 1982 Federal income taxes.

The sole remaining issue[1] for determination concerns the reporting of interest paid on a loan, the proceeds of which were invested in a high-rate money market certificate which was continually renewed from 1980 through 1982. Petitioners contend that they may reduce the amount of interest income received from the certificates by the amount of interest expense incurred during the year (i.e., they may net the interest expense against the interest income and report only the difference as interest income). Respondent, on the other hand, contends that the full amount of interest income must be reported, and the interest expense must be taken as an itemized deduction. Petitioners desire to report the net amount because they had insufficient deductible expenses in 1982 to satisfy the threshold amount for itemizing deductions.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners, husband and wife, resided in Harahan, Louisiana, at the time they filed their petition.

As of October 25, 1979, petitioners owned a 4-year, 7½-percent savings certificate in the amount of $30,000; the savings certificate was issued by Fidelity Homestead Associates of Louisiana (the association). To take advantage of rising interest rates, petitioners borrowed $27,000 (the share loan) against their savings certificate; interest on the share loan was at the rate of 8½ percent.

Petitioners used the proceeds of the share loan, together with other funds, to purchase a 6-month money market certificate issued by the association. The first of these certificates bore interest at the rate of 12.651 percent per year. Upon maturity (April 24, 1980), the proceeds of the first certificate were transferred to a new 6-month certificate which bore interest at the rate of 13.549 percent per

---

[1]Petitioners apparently have conceded that they omitted $149 of dividends and $33 of interest in their 1982 tax return.

year. Thereafter, at each successive 6-month interval, the previous 6-month certificate was renewed. Each of the certificates bore interest at a rate higher than the 8½-percent interest rate charged for the share loan.

During 1982, petitioners received $6,746 in interest income from their money market certificates and paid interest on the share loan in the amount of $2,879. Petitioners did not itemize their deductions on their 1982 tax return. On their 1982 tax return, petitioners, pursuant to section 62(12),[2] deducted the $2,879 interest expense as a penalty on early withdrawal of savings. Respondent disallowed such deduction.

Petitioners concede that claiming such deduction as a penalty was "technically incorrect," but they claim that because they would not have incurred the interest expense on the share loan but for their desire to take advantage of increased interest rates offered by the association, they should be allowed to report the interest income received from the money market certificates net of the interest expense paid on the share loan.

Petitioners assert they have been netting the interest expense on the share loan against interest received from the money market certificates since 1980, and that respondent had previously acquiesced to such netting. Petitioners therefore argue that respondent is bound to accord them the same netting tax treatment for 1982.

### OPINION

Petitioners seek to minimize the amount of tax they pay on the interest income they received from money market certificates by netting the interest expense incurred in obtaining funds to purchase such certificates against the interest income so received. This, they cannot do.

Under our Federal income tax system, an individual's tax base, the amount on which tax rates are imposed, is his "taxable income." In general, an individual's "taxable income" is his adjusted gross income less the sum of (1) his "excess itemized deductions" and (2) his personal exemptions. Sec. 63(b). The amount of the individual's "excess

---

[2]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.

itemized deductions" is the excess of his itemized deductions over the applicable zero bracket amount.[3] Sec. 63(c). For 1982, the zero bracket amount for married individuals filing jointly was $3,400.

In general, interest received is includable in gross income. Sec. 61(a)(4). Interest paid or accrued within the taxable year on indebtedness constitutes an itemized deduction. Sec. 163. There is no statutory authority allowing one to net interest expense against interest income.

Petitioners did not itemize deductions on their 1982 tax return; presumably, even with the inclusion of the interest expense on the share loan ($2,879) as an itemized deduction, petitioners did not have itemized deductions in 1982 in excess of the $3,400 threshold zero-bracket amount. Petitioners cannot do indirectly (i.e., netting interest expense against interest income) what they cannot do directly.[4]

Petitioners contend that because respondent permitted them to net their interest expense against their interest income in 1980, respondent must accord them the same treatment in 1982. We disagree. The erroneous past actions of respondent cannot be relied upon to allow a deduction that is not permitted by statute. See *Carpenter v. United States*, 495 F.2d 175, 184 (5th Cir. 1974); *Carter v. Commissioner*, 51 T.C. 932, 935 (1969). Moreover, each year is the origin of a new liability and a separate cause of action. *Commissioner v. Sunnen*, 333 U.S. 591, 598 (1948). A settlement for 1 year is not controlling in another year when the issue is tried.

In view of the foregoing and concessions of petitioners,

*Decision will be entered for the respondent.*

---

[3]The zero-bracket amount is that amount of income which is taxed at a zero-percent rate. It is built into the tax tables and rate schedules.

[4]Nothing herein should be construed to mean we are overruling our holding in *Ideal Basic Industries, Inc. v. Commissioner*, 82 T.C. 352, 401 (1984), that in computing the "50 percent limit" of "taxable income from the property," for purposes of sec. 613(a), interest income may be reduced by interest expenses.