BOWATER INCORPORATED, F.K.A. BOWATER HOLDINGS, INC., AND SUBSIDIARIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18436–91.      Filed September 14, 1993.

*Robert T. Carney, Alex Edward Medovich, John N. Tsigakos, Ecton R. Manning,* and *John B. Glendon,* for petitioner.

*Stephen M. Miller* and *Meryl Silver,* for respondent.

COLVIN, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax of $3,231,988 for 1976, $5,214,010 for 1979, and $27,096,396 for 1980.

The issue for decision is whether petitioner may net interest income against interest expense in determining the amount of the interest deduction to be allocated and apportioned in computing the combined taxable income (CTI) of petitioner and its domestic international sales corporations (DISC's). We hold that petitioner may.

As explained below, we distinguish *Dresser Indus., Inc. v. Commissioner,* 911 F.2d 1128 (5th Cir. 1990), revg. on this issue 92 T.C. 1276 (1989), because a regulation (sec. 1.861-8(e)(2), Income Tax Regs.) applies here that did not apply in *Dresser Industries.*

The parties submitted this issue for decision on a fully stipulated basis. Other issues in this case will be tried or otherwise resolved in due course. Section references are to the Internal Revenue Code in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

## 1. *Petitioner*

Bowater, Inc., f.k.a. Bowater Holdings, Inc., & Subsidiaries (petitioner), is a domestic corporation formed under the laws of Delaware. Petitioner's principal place of business was in Darien, Connecticut, when the petition was filed. During petitioner's taxable years 1979 and 1980, its stock was wholly owned, directly or indirectly, by Bowater Corp., Ltd., a British corporation.

Petitioner and its subsidiaries filed consolidated Federal income tax returns for 1979 and 1980. Included in these returns were Bowater Southern Paper Corp. (Southern), and Bowater Carolina Corp. (Carolina). Carolina and Southern were wholly owned U.S. subsidiaries of petitioner.

## 2. *The Domestic International Sales Corporations*

Southern Export Corp. (Southern Export) was a wholly owned U.S. subsidiary of Southern. Carolina Export Co. (Carolina Export) was a wholly owned U.S. subsidiary of Carolina. Southern Export and Carolina Export qualified as DISC's throughout 1979 and 1980. They were accrual basis taxpayers and adopted fiscal years ending January 31. They filed timely Federal income tax returns (Forms 1120-DISC) for their fiscal years ending in 1980 and 1981.

In 1979 and 1980, Southern Export and Carolina Export acted as commission agents for Southern and Carolina, respectively, in connection with the export sales of wood pulp and related products to customers outside of the United States and its possessions. Southern and Carolina computed the commissions paid to Southern Export and Carolina Export under the "50/50 combined taxable income" (CTI) method. Sec. 994(a)(2).

In computing interest expense to be apportioned under sections 1.994-1(c)(6)(iii) and 1.861-8, Income Tax Regs., in the computation of the CTI of Southern and Carolina and their

DISC's, petitioner allocated net interest expense (i.e., gross interest expense less gross interest income), as follows:

*Amounts of Gross and Net Interest Expense*

| 1979 | Carolina | Southern |
|---|---|---|
| Gross interest expense | $1,036,575 | $329,833 |
| Gross interest income | 932,151 | 184,627 |
| Net interest expense | 104,424 | 145,206 |
| 1980 | | |
| Gross interest expense | 1,332,345 | 544,906 |
| Gross interest income | 1,787,258 | 406,455 |
| Net interest expense | (454,913) | 138,451 |

The interest income of Southern and Carolina used to calculate net interest expense resulted primarily from the following procedure: sales proceeds from the sales of pulp and paper products sold by Carolina and Southern through their respective DISC's were collected by petitioner. Petitioner disbursed amounts to Carolina and Southern to cover their expenses. Petitioner retained the remainder for various periods and treated it on the books of the respective companies as loans from Carolina and Southern to petitioner.[1]

OPINION

1. *Background*

Congress enacted the DISC provisions (secs. 991-997) in 1971 to stimulate exports and to remove a tax disadvantage faced by U.S. firms exporting through domestic corporations. Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497; H. Rept. 92-533 (1971), 1972-1 C.B. 498, 502, 529; S. Rept. 92-437 (1971), 1972-1 C.B. 559, 565, 609. A qualifying DISC may defer part of the Federal tax on income from exports. However, the shareholders of a DISC are taxable currently on part of the profits and may generally defer taxation on the remaining part until the profits are withdrawn from the DISC

---

[1] For purposes of this proceeding, the parties have stipulated that whether the retained amounts are bona fide loans is not an issue. Thus, we assume here that the loans have economic substance and were made on an arm's-length basis. We express no opinion about the result without this stipulation.

or until the corporation ceases to qualify as a DISC. Secs. 995(a) and (b) and 996(a)(1).

For a corporation to qualify as a DISC, at least 95 percent of its gross receipts must be qualified export receipts, and 95 percent of its assets must be qualified export assets. Secs. 992(a)(1) and 993(a), (b), (f).

Section 994 provides intercompany pricing rules which are used to determine the price at which the parent corporation is deemed to have sold its products to the DISC. A DISC must use one of three intercompany pricing methods: (1) 4 percent of qualified export receipts on the sale of export property; (2) 50 percent of the CTI of the DISC and its supplier; or (3) the arm's-length price, computed in accordance with section 482. Sec. 994(a). The 50-percent method is at issue in this case. Sec. 994(a)(2). It allows a DISC to earn taxable income of 50 percent of the CTI of a DISC and its supplier which is attributable to qualified export receipts derived from the sale by the DISC of export property plus 10 percent of export promotion expenses of the DISC attributable to those receipts.

## 2. *Treatment of Interest Expense for Computing CTI*

We must decide whether petitioner may net interest income against interest expense in determining the amount of interest deductions to be allocated and apportioned in computing the CTI of Southern, Carolina, and their DISC's. Petitioners have a larger CTI and a larger DISC tax benefit if they are permitted to net interest income against interest expense.

CTI is determined generally in accordance with the principles applicable under section 861. H. Rept. 92-533, *supra,* 1972-1 C.B. at 538. The legislative history provides:

the combined taxable income from the sale of the export property is to be determined generally in accordance with the principles applicable under section 861 for determining the source (within or without the United States) of the income of a single entity with operations in more than one country. These rules generally allocate to each item of gross income all expenses directly related thereto, and then apportion other expenses among all items of gross income on a ratable basis. Thus, the combined taxable income of a DISC and a related person with respect to the sale by the DISC of export property would be determined by deducting from the DISC's gross receipts the related person's cost of goods sold with respect to the property, the selling, overhead and administrative expenses of both the DISC and the related person which are directly related to the produc-

tion or sale of the export property and a portion of the related person's and the DISC's expenses not allocable to any specific item of income, such portion to be determined on the basis of the ratio of the combined gross income from the export property to the total gross income of the related person and the DISC. [Fn. ref. omitted.]

See also S. Rept. 92-437, *supra,* 1972-1 C.B. at 619. The Congressional reference to section 861 also appears in the DISC regulations:

(iii) Costs (other than cost of goods sold) which shall be treated as relating to gross receipts from sales of export property are (a) the expenses, losses, and other deductions definitely related, and therefore allocated and apportioned, thereto, and (b) a ratable part of any other expenses, losses, or other deductions which are not definitely related to a class of gross income, determined in a manner consistent with the rules set forth in § 1.861-8. [Sec. 1.994-1(c)(6)(iii), Income Tax Regs.]

## 3. *Fungibility of Money and Section 1.861-8(e)(2), Income Tax Regs.*

For purposes of section 861, interest is assumed to be fungible. Sec. 1.861-8(e)(2), Income Tax Regs. These regulations are based on the theory that all of a taxpayer's activities and assets need funds and that a taxpayer has great flexibility as to the source and use of funds. See Isenbergh, International Taxation, par. 6.8.1, at 205 (1990); Kuntz & Peroni, U.S. International Taxation, par. A2.05(5)(a), at A2-202 and 203 (1992). Section 1.861-8(e)(2), Income Tax Regs., was adopted on January 3, 1977, effective for taxable years beginning after December 31, 1976. It states:

(e) *Allocation and apportionment of certain deductions*—(1) *In general.* Subparagraphs (2) and (3) of this paragraph contain rules with respect to the allocation and apportionment of interest expense * * *

(2) *Interest*—(i) *In general.* The method of allocation and apportionment for interest set forth in this paragraph (e)(2) is based on the approach that money is fungible and that interest expense is attributable to all activities and property regardless of any specific purpose for incurring an obligation on which interest is paid. This approach recognizes that all activities and property require funds and that management has a great deal of flexibility as to the source and use of funds. Normally, creditors of a taxpayer subject the money advanced to the taxpayer to the risk of the taxpayer's entire activities and look to the general credit of the taxpayer for payment of the debt. When money is borrowed for a specific purpose, such borrowing will generally free other funds for other purposes and it is reasonable under this approach to attribute part of the cost of borrowing to such other purposes. * * *

(ii) *Allocation of interest.* Except as provided in subdivisions (iii) and (iv) of this subparagraph, the aggregate of deductions for interest shall be considered related to all income producing activities and properties of the taxpayer and, thus, allocable to all the gross income which the income producing activities and properties of the taxpayer generate, have generated, or could reasonably have been expected to generate.

Both parties contend that this regulation applies here and that it favors their respective positions. At the same time, both parties recognize that this regulation does not expressly state whether or not netting of interest is allowed.

*Dresser Indus., Inc. v. Commissioner,* 911 F.2d 1128 (5th Cir. 1990), revg. on this issue 92 T.C. 1276 (1989), decided a form of this issue as it arose in an earlier year. That case is distinguishable because section 1.861-8(e)(2), Income Tax Regs., applies here, but did not apply to the years before the Court in *Dresser Industries. Dresser Industries* dealt with the taxpayer's taxable years 1976 and 1977, which began on November 1, 1975, and November 1, 1976. *Dresser Indus., Inc. v. Commissioner,* 92 T.C. at 1276. Section 1.861-8(e)(2), Income Tax Regs., was first effective for taxable years beginning after 1976. Thus, it did not apply in that case. *Dresser Indus., Inc. v. Commissioner,* 911 F.2d at 1134-1135. In contrast, the parties agree that the regulation applies here.

We believe petitioner's argument for netting interest expense and interest income is similar to the fungibility concept in the regulation because both focus on underlying economic realities. Netting of interest avoids unequal treatment of taxpayers with the same amount of actual interest cost, just as the fungibility-of-interest concept avoids unequal treatment of taxpayers whose indebtedness is structured differently.[2] As the Court of Appeals for the Fifth Circuit said in *Dresser Indus., Inc. v. Commissioner,* 911 F.2d at 1135:

Rarely, if ever, do the amount and timing of business borrowing directly correlate to specific investments. For instance, a business might borrow sufficient funds to finance its operations for the coming quarter. The business typically incurs the debt in a single transaction, even though its cash requirements are spread out over the ensuing three months. As a result,

---

[2] In *St. Jude Medical Inc. v. Commissioner,* 97 T.C. 457, 481 (1991), we rejected the taxpayer's contention that we should decide the case based on economic reality. In that case, the taxpayer contended that sec. 1.861-8(e)(3), Income Tax Regs., was invalid and that it led to a result at odds with economic reality. That regulation did not apply a fungibility concept. In contrast, here, the regulation's fungibility approach suggests that consideration of economic reality should govern in deciding this case.

the business will have at least some borrowed funds on hand that are not required immediately but which may be required in the near future. To reduce the cost of holding these funds until they are actually needed, the business might invest in short-term, interest bearing instruments. * * * Alternatively, a business might decide to finance its operations by issuing long-term bonds or other securities. Because it may be impractical to retire these obligations prior to their maturity, the business will typically invest any cash surplus to offset the cost of carrying its long-term debt. * * * In either case, the total *cost of the borrowing* is the interest expense on the debt incurred, reduced by the interest earned on the investment of any temporary cash surplus.

Respondent contends that interest income is not attributable to qualified export receipts. That contention is not persuasive because it assumes its own conclusion: that interest income should be considered separately, and not netted with interest expense.[3] Respondent's position of requiring allocation of gross interest expense would burden a DISC with a disproportionate share of the actual borrowing costs of all operations. *Dresser Indus., Inc. v. Commissioner,* 911 F.2d at 1136.

Respondent asserts that the only exception in the regulations to fungibility is stated in section 1.861-8(e)(2)(iv), Income Tax Regs., which does not apply here. Section 1.861-8(e)(2)(iv)(B), Income Tax Regs., provides in part:

(B) Where an interest deduction is definitely related solely to specific property under (A) of this subdivision (iv), such interest deduction and such property, or the portion thereof, to which such interest deduction relates shall not be included in the allocation described in subdivision (ii) of this paragraph (e)(2). * * *

We agree that this provision applies only to interest expense allocable to specific property. However, regardless of this exception, we believe that netting is consistent with the fungibility approach taken in section 1.861-8(e)(2), Income

---

[3] Even though sec. 1.861-8(e)(2), Income Tax Regs., did not apply to the years in *Dresser Indus., Inc. v. Commissioner,* 92 T.C. 1276 (1989), revd. on this issue 911 F.2d 1128 (5th Cir. 1990), both the Tax Court and the Court of Appeals for the Fifth Circuit discussed it in dicta. Notwithstanding that discussion, the regulation was not effective for the years before the Court in *Dresser Industries.* In our opinion in *Dresser Industries,* we said that sec. 1.861-8(e)(2), Income Tax Regs., "does not provide for the netting of interest income and expense before allocation and apportionment." *Dresser Indus., Inc. v. Commissioner,* 92 T.C. at 1286. We did not discuss why the absence of a rule specifically related to netting should be construed to prohibit or allow netting. As discussed in this opinion, we conclude that, in the absence of a rule resolving the issue, netting is consistent with the fungibility concept in sec. 1.861-8(e)(2), Income Tax Regs., and with analogous precedents which allow netting, such as *General Portland Cement Co. v. United States,* 628 F.2d 321 (5th Cir. 1980), and *Ideal Basic Indus., Inc. v. Commissioner,* 82 T.C. 352 (1984).

Tax Regs. *Dresser Indus., Inc. v. Commissioner,* 911 F.2d at 1135.

### 4. *Net Interest Expense Is the Actual Cost of Interest*

Net interest expense is the actual cost of borrowing; the total cost of borrowing is the interest expense on the debt incurred, reduced by the interest earned on the investment of any temporary cash surplus. *General Portland Cement Co. v. United States,* 628 F.2d 321, 344 (5th Cir. 1980); *Ideal Basic Indus., Inc. v. Commissioner,* 82 T.C. 352, 402 (1984). The issue in those cases is analogous to the issue here. *Dresser Indus., Inc. v. Commissioner,* 911 F.2d at 1133-1136, 92 T.C. at 1284. Section 613(a) provides a deduction for percentage depletion limited to 50 percent of the taxpayer's taxable income from mining property. In computing taxable income, the taxpayer may reduce gross income by allowable deductions attributable to the mining process, including "financial overhead." Sec. 1.613-5(a), Income Tax Regs. In computing "financial overhead", the taxpayer may net interest expense and interest income. *General Portland Cement Co. v. United States, supra; Ideal Basic Indus., Inc. v. Commissioner, supra.* The Court of Appeals for the Fifth Circuit relied on these cases in reversing our decision in *Dresser Indus., Inc. v. Commissioner,* 911 F.2d at 1133-1136. In *General Portland Cement Co. v. United States, supra* at 344, the Court of Appeals reasoned:

We think the purpose behind the "50% limit" argues in favor of the taxpayer in the instant case. We believe that purpose is served by subtracting the *actual* cost of interest, rather than an inflated amount. Taxpayer's actual cost of interest is its "net" interest expense.

The Court of Appeals relied on the fungibility concept as the underlying principle to decide that case. *Dresser Indus., Inc. v. Commissioner,* 911 F.2d at 1135. These cases support petitioner's position because of the close logical relationship to the netting issue here.

Respondent argues that *General Portland Cement* is distinguishable because in it, unlike in this case, there was an investment of a temporary cash surplus from the borrowed funds. That basis for distinction is not persuasive in the context of fungibility of interest. As noted earlier, respondent

does not dispute that the loans are bona fide.[4] We see no economic difference, and the parties point to none, among interest earned on the investment of surplus funds from short-term Treasury bills and commercial paper in *General Portland Cement Co. v. United States,* 628 F.2d at 343, short-term, highly liquid commercial paper in *Ideal Basic Indus., Inc. v. Commissioner,* 82 T.C. at 400, unspecified investments in *Dresser Indus., Inc. v. Commissioner,* 911 F.2d at 1130, and bona fide loans to related parties as in this case. In all of these situations net interest is the actual cost of borrowing.

We recognize that in other situations a taxpayer may not net interest income and expense. For example, in *Murphy v. Commissioner,* 92 T.C. 12, 14-15 (1989), a taxpayer who claimed the standard deduction was not allowed to net interest income and expenses because netting would circumvent the limitation of the deduction of personal interest to individuals who itemize their tax deductions. This consideration is not present in the percentage depletion or DISC contexts.

After disposition of the remaining issues in this case, decision will be entered under Rule 155. With respect to disposition of the remaining issues,

*An appropriate order will be issued.*