118 T.C. No. 11

UNITED STATES TAX COURT

SUNOCO, INC. AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19631-97.            Filed March 15, 2002.

P claimed foreign tax credits under sec.
901(a), I.R.C., on its consolidated returns
for 1982, 1983, 1984, and 1986. In these
proceedings, P seeks to change the method of
computing the overall limitation on the credit
imposed by sec. 904(a), I.R.C. Specifically, P
seeks to change the manner in which it allocates
and apportions interest expenses for purposes
of computing taxable income from sources without
the United States, the numerator of the limiting
fraction. P claims that it is entitled to offset
interest income against interest expenses before
it allocates and apportions net interest expenses
under sec. 1.861-8(e)(2), Income Tax Regs.

<u>Held</u>: Sec. 1.861-8(e)(2), Income Tax Regs.,
does not permit P to allocate and apportion net
interest expenses. The Tax Court's decision in
<u>Bowater, Inc., & Subs. v. Commissioner</u>, 101 T.C.
207 (1993), revd. 108 F.3d 12 (2d Cir. 1997),
which holds the opposite, is hereby overruled.

Marjorie A. Burnett, Thomas D. Johnston, Robert L. Moore II, Michael J. McGoldrick, and Nancy M. Seweryn, for petitioner.

John A. Guarnieri, Richard H. Gannon, and Keith L. Gorman, for respondent.

OPINION

WHALEN, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax:

| Year | Deficiency |
| --- | --- |
| 1979 | $10,563,157 |
| 1981 | 5,163,449 |
| 1983 | 35,916,359 |

Petitioner disputes the above deficiencies and further claims to have overpaid income taxes for 1979, 1981, and 1983 by at least $25,082,591, $6,881,055, and $14,137,211, respectively.

After concessions, there are three issues for decision in this case. Each issue will be the subject of a separate opinion. The issue that is the subject of this opinion arises in the context of computing the overall limit imposed by section 904(a) on the foreign tax credits claimed by petitioner under section 901(a) for taxable years 1982, 1983, 1984, and 1986, referred to herein as the years in issue. In this opinion, all section

references are to the Internal Revenue Code as in effect during the years in issue, unless stated otherwise.

This issue involves the computation of income from sources without the United States, the numerator of the limiting fraction under section 904(a). Specifically, in allocating and apportioning interest expenses for purposes of computing taxable income from sources without the United States for the years in issue, the question is whether section 1.861-8(e)(2), Income Tax Regs., contemplates that the aggregate interest expense incurred by each member of petitioner's affiliated group of corporations for the taxable year can first be offset by that member's interest income. Stated more simply, the issue is whether netting of interest expense and interest income is permitted by section 1.861-8(e)(2), Income Tax Regs.

As a preliminary matter, we must decide an evidentiary objection raised by respondent. Respondent filed a motion in limine to exclude the testimony of an economist, Dr. J. Gregory Ballentine, who was called by petitioner as an expert witness. Respondent argues that Dr. Ballentine's testimony should be excluded because it represents "irrelevant and immaterial legal conclusions and opinions and does not assist the Court." Respondent also contends

that Dr. Ballentine's testimony should be excluded because it amounts to impermissible advocacy.

Respondent also proffered the testimony of an expert witness but did so only to preserve the Commissioner's right to offer such testimony if the testimony of petitioner's expert were admitted into evidence. At trial, the Court permitted both experts to testify and reserved ruling on respondent's motion in limine.

Petitioner offers the testimony of Dr. Ballentine to "assist the Court in interpreting the economic terms in section 1.861-8(e)(2)", Income Tax Regs. According to his report, Dr. Ballentine reached two overall conclusions: (1) "Netting interest income against interest expense implements the economic concept of the fungibility of money as it relates to sources of funds"; (2) "interest netting achieves a tax neutrality between borrowing and reducing cash balances as sources of funds." Petitioner argues the same two principles in the posttrial briefs filed on its behalf. Dr. Ballentine's report states that he was retained "to provide an economic evaluation of netting interest income against interest expense for purposes of the tax rules that apportion interest expense between domestic and foreign source income."

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.* * *

Thus, expert testimony is admissible under rule 702 if it assists the Court to understand the evidence or to determine a fact in issue.

The parties agree that the subject issue, involving the interpretation of section 1.861-8(e)(2), Income Tax Regs., is a question of law and that there are no facts in dispute. Thus, the question we must answer is whether Dr. Ballentine's testimony aids the Court in understanding the evidence. Dr. Ballentine's testimony provides economic examples and policy reasons as to why the appropriate measure of interest expense is net interest expense. Petitioner's brief reiterates these same concepts and includes the same examples.

We find that Dr. Ballentine's report and testimony merely advocate petitioner's position and do not aid the Court "to understand the evidence or to determine a fact

in issue".  Fed. R. Evid. 702.  Expert testimony is not admissible for such purposes.  An expert who is merely an advocate of a party's position does not assist the Court in understanding the issue.  See Hosp. Corp. of Am. v. Commissioner, 109 T.C. 21 (1997); Alumax, Inc. v. Commissioner, 109 T.C. 133 (1997), affd. 165 F.3d 822 (11th Cir. 1999); Snap-Drape, Inc. v. Commissioner, 105 T.C. 16, 20 (1995), affd. 98 F.3d 194 (5th Cir. 1996); Laureys v. Commissioner, 92 T.C. 101, 129 (1989); Robertson v. Commissioner, T.C. Memo. 1999-130, affd. without published opinion 87 AFTR2d 2001-1274, 2001-1 USTC par. 50,276 (9th Cir. 2001); see also Estate of Halas v. Commissioner, 94 T.C. 570, 577 (1990) ("In the context of valuation cases, we have observed that experts may lose their usefulness and credibility when they merely become advocates for one side.").

We conclude that Dr. Ballentine's testimony does not assist the Court in understanding the legal question issue and is not admissible.  Accordingly, we shall grant respondent's motion in limine.

Most of the facts relating to the issue which is the subject of this opinion were stipulated by the parties. The stipulated facts and accompanying exhibits are so found and are hereby incorporated in this opinion.

Petitioner was incorporated under the laws of the Commonwealth of Pennsylvania. At the time the instant petition was filed on its behalf, petitioner's principal place of business and mailing address was in Philadelphia, Pennsylvania. During each of the tax years in issue, petitioner was the common parent of an affiliated group of corporations, as defined in section 1504(a), and it filed a consolidated Federal income tax return on behalf of itself and the other members of the affiliated group as permitted by section 1501.

At all times material to this case, petitioner and the other members of its affiliated group engaged in the business of acquiring and developing oil, gas, and other energy properties, of refining or otherwise preparing the natural resources produced from the properties for sale to customers, and of marketing and transporting those products to customers both in the United States and abroad. During the years in issue, petitioner and its affiliated corporations earned income from various sources, domestic and foreign, including income from interest, dividends, the production of oil and gas and other hydrocarbons, and the sale of products derived from the production of hydrocarbons.

Petitioner chose to use the foreign tax credit under section 901(a) in computing the tax liability of its affiliated group of corporations for consolidated return years 1982, 1983, 1984, and 1986.  In computing the overall limitation on the credit under section 904(a), petitioner allocated and apportioned a portion of the interest expense of each member of the affiliated group to sources without the United States for purposes of computing the numerator of the limiting fraction under section 904(a); i.e., taxable income from sources without the United States. The following schedule sets forth the deduction for interest claimed by each member of petitioner's affiliated group for each of the years in issue, the portion of such amount that was allocated and apportioned to sources without the United States for each year, and the ratio of the latter to the former:

| 1982 | Interest expense | Apportioned to foreign source income | Ratio percent |
|---|---|---|---|
| 650 Leasing Co. | $682,931 | $235,504 | 37.12 |
| Sun Leasing Co. | 4,729,086 | 2,729,628 | 57.72 |
| 666 Leasing Co. | 4,072,539 | 2,138,083 | 52.50 |
| 670 Leasing Co. | 1,830,136 | 853,210 | 46.62 |
| 673 Leasing Co. | 1,627,381 | 727,928 | 44.73 |
| 675 Leasing Co. | 1,983,276 | 1,002,744 | 50.56 |
| 652 Leasing Co. | 794,330 | 356,448 | 44.87 |
| Kee Leasing Co. | 581,235 | 403,610 | 69.44 |
| 653 Leasing Co. | 814,727 | 398,972 | 48.97 |
| 667 Leasing Co. | 3,286,585 | 1,709,024 | 52.00 |
| Millcreek Leasing Co. | 830,407 | 202,492 | 24.38 |
| DeSun Shipping | 47,658 | 33,697 | 70.71 |
| Eastern Sun Shipping | 37,115 | 24,183 | 65.16 |
| NY Sun Shipping | 9,970,340 | 8,851,391 | 88.78 |
| NJ Sun Shipping | 143,340 | 116,170 | 81.05 |
| PA Shipping | 46,423 | 29,294 | 63.10 |
| Phil Sun Shipping | 10,809,958 | 3,214,297 | 29.74 |
| Western Sun Shipping | 50,003 | 31,980 | 63.96 |
| Sun Transport, Inc. | 3,650,045 | 1,465,486 | 40.15 |
| Sun Note Co. | 31,066,253 | 31,066,253 | 100.00 |
| North Sea Oil Co. | 65,897 | 65,897 | 100.00 |
| Totem Ocean Trailer | 46,949 | 29,813 | 63.50 |
| | 77,166,614 | 55,704,104 | |

| 1983 | Interest expense | Apportioned to foreign source income | Ratio percent |
|---|---|---|---|
| 650 Leasing Co. | $612,220 | $357,904 | 58.46 |
| Sun Leasing Co. | 4,736,241 | 2,808,118 | 59.29 |
| 666 Leasing Co. | 4,084,197 | 2,580,396 | 63.18 |
| 670 Leasing Co. | 1,756,214 | 973,645 | 55.44 |
| 652 Leasing Co. | 714,282 | 312,641 | 43.77 |
| Kee Leasing Co. | 504,412 | 357,058 | 70.79 |
| 653 Leasing Co. | 736,315 | 375,962 | 51.06 |
| 667 Leasing Co. | 3,160,356 | 2,019,783 | 63.91 |
| Millcreek Leasing Co. | 742,214 | 365,707 | 49.27 |
| NY Sun Shipping | 9,849,306 | 8,573,395 | 87.05 |
| NJ Sun Shipping | 208,102 | 129,266 | 62.12 |
| Phil Sun Shipping | 10,688,995 | 3,437,299 | 32.16 |
| Texas Sun Shipping | 33,963 | 12,819 | 37.74 |
| Tropic Sun Shipping | 474,700 | 272,684 | 57.44 |
| Sun Transport, Inc. | 2,644,781 | 926,810 | 35.04 |
| Heleasco Fifteen | 1,444,639 | 1,297,009 | 89.78 |
| Sun Note Co. | 25,667,812 | 25,634,424 | 99.87 |
| | 68,058,749 | 50,434,920 | |

| 1984 | Interest expense | Apportioned to foreign source income | Ratio percent |
|---|---|---|---|
| Kee Leasing Co. | $408,197 | $154,339 | 37.81 |
| 666 Leasing Co. | 4,083,327 | 1,964,080 | 48.10 |
| 670 Leasing Co. | 1,669,360 | 610,485 | 36.57 |
| 650 Leasing Co. | 536,038 | 270,003 | 50.37 |
| 652 Leasing Co. | 613,066 | 176,024 | 28.71 |
| 653 Leasing Co. | 636,635 | 118,974 | 18.69 |
| 667 Leasing Co. | 3,018,359 | 885,134 | 29.33 |
| Sun Leasing Co. | 4,689,864 | 2,059,788 | 43.92 |
| NY Sun Shipping | 9,712,823 | 9,165,743 | 94.37 |
| Phil Sun Shipping | 10,551,646 | 4,687,164 | 44.43 |
| Tropic Sun Shipping | 644,883 | 313,703 | 48.64 |
| Sun Transport, Inc. | 3,091,754 | 985,633 | 31.88 |
| Sun Oil Trading Co. | [1]627,633 | 32,260 | 5.14 |
| Sun Note Co. | 25,854,099 | 25,693,399 | 99.38 |
| North Sea Sun Oil Co. | 7,681,288 | 7,541,569 | 98.18 |
| | 73,818,972 | 54,658,298 | |

[1] One of petitioner's exhibits lists this amount as $2,114,469.  See p. 17, infra.

| 1986 | Interest expense | Apportioned to foreign source income | Ratio percent |
|---|---|---|---|
| Kee Leasing Co. | $213,410 | $27,604 | 12.93 |
| 666 Leasing Co. | 3,907,731 | 1,750,664 | 44.80 |
| 670 Leasing Co. | 1,468,580 | 621,944 | 42.35 |
| 650 Leasing Co. | 404,732 | 189,415 | 46.80 |
| Sun Leasing Co. | 4,532,004 | 1,960,092 | 43.25 |
| Millcreek Leasing Co. | 435,448 | 102,064 | 23.44 |
| Tropic Sun Shipping | 644,829 | 242,814 | 37.66 |
| Sun Transport, Inc. | 2,356,829 | 650,044 | 27.58 |
| Sunoco Overseas, Inc. | 211.438 | 211,438 | 100.00 |
| Sun Refining & Mktg. Co. | 44,588,973 | 4,598,484 | 10.31 |
| Sun Oil Trading Co. | 549,406 | 8,918 | 1.62 |
| Sun Co., Inc. | 157,687,537 | 5,097,677 | 3.23 |
| Sun Oil Intl. | 7,190,703 | 2,487,983 | 34.60 |
| North Sea Sun Oil Co. | 28,050,064 | 27,208,562 | 97.00 |
| Claymont Investment Co. | 217,180,793 | 47,426 | 0.02 |
| | 469,422,477 | 45,205,129 | |

The parties have stipulated that "in most cases" the interest expense of each member of petitioner's affiliated group of corporations was apportioned "in general accordance with the optional gross income method [sic] of apportionment described in Treas. Reg. §1.861-8(e)(2)(vi)."  The stipulation does not state which of the optional gross income methods described by sec. 1.861-8(e)(2)(vi), Income Tax Regs., was used in the case of any

member of the group.  In any event, the following schedule shows the gross income of each member of petitioner's affiliated group of corporations for each of the subject years, that member's gross income from sources without the United States for each year, and the ratio of the latter to the former:

| 1982 | Gross income | Foreign gross income | Ratio percent |
|------|-------------|---------------------|---------------|
| 650 Leasing Co. | $3,288,110 | $1,221,496 | 37.15 |
| Sun Leasing Co. | 6,872,415 | 3,966,133 | 57.71 |
| 666 Leasing Co. | 6,401,918 | 3,372,797 | 52.68 |
| 670 Leasing Co. | 4,733,818 | 2,214,708 | 46.78 |
| 673 Leasing Co. | 4,308,780 | 1,924,955 | 44.68 |
| 675 Leasing Co. | 3,987,511 | 2,016,544 | 50.57 |
| 652 Leasing Co. | 3,183,942 | 1,420,014 | 44.60 |
| Kee Leasing Co. | 1,720,403 | 1,194,921 | 69.46 |
| 653 Leasing Co. | 3,209,671 | 1,576,737 | 49.12 |
| 667 Leasing Co. | 7,577,559 | 3,950,760 | 52.14 |
| Millcreek Leasing Co. | 6,775,203 | 1,652,111 | 24.38 |
| DeSun Shipping | 1,868,480 | 1,321,135 | 70.71 |
| Eastern Sun Shipping | 340,725 | 222,010 | 65.16 |
| NY Sun Shipping | 8,302,978 | 6,755,590 | 81.36 |
| NJ Sun Shipping | -814,965 | 575,083 | -70.57 |
| PA Shipping | 3,912,021 | 2,468,565 | 63.10 |
| Phil Sun Shipping | 6,602,489 | 1,963,223 | 29.73 |
| Western Sun Shipping | 2,574,519 | 1,646,584 | 63.96 |
| Sun Transport, Inc. | 95,328,918 | 38,274,373 | 40.15 |
| Sun Note Co. | 43,260,421 | 41,406,722 | 95.72 |
| North Sea Oil Co. | 42,518,569 | 42,518,569 | 100.00 |
| Totem Ocean Trailer | 92,031,992 | 57,380,743 | 62.35 |
| | 347,985,477 | 219,043,773 | |

| 1983 | Gross income | Foreign gross income | Ratio percent |
|---|---|---|---|
| 650 Leasing Co. | $2,593,100 | $1,508,054 | 58.16 |
| Sun Leasing Co. | 6,973,146 | 4,151,644 | 59.54 |
| 666 Leasing Co. | 8,943,399 | 5,644,013 | 63.11 |
| 670 Leasing Co. | 4,132,347 | 2,304,872 | 55.78 |
| 652 Leasing Co. | 2,523,829 | 1,104,364 | 43.76 |
| Kee Leasing Co. | 2,012,673 | 1,424,195 | 70.76 |
| 653 Leasing Co. | 2,552,479 | 1,306,385 | 51.18 |
| 667 Leasing Co. | 6,427,811 | 4,098,914 | 63.77 |
| Millcreek Leasing Co. | 8,220,982 | 4,050,674 | 49.27 |
| NY Sun Shipping | 7,917,134 | 6,891,523 | 87.05 |
| NJ Sun Shipping | 3,008,541 | 1,868,808 | 62.12 |
| Phil Sun Shipping | 6,930,169 | 2,228,559 | 32.16 |
| Texas Sun Shipping | 1,392,393 | 525,539 | 37.74 |
| Tropic Sun Shipping | 3,047,355 | 1,750,507 | 57.44 |
| Sun Transport, Inc. | 85,157,516 | 29,842,158 | 35.04 |
| Heleasco Fifteen | 2,415,666 | 2,168,805 | 89.78 |
| Sun Note Co. | 44,530,627 | 42,711,487 | 95.91 |
| | 198,779,167 | 113,580,501 | |

| 1984 | Gross income | Foreign gross income | Ratio percent |
|---|---|---|---|
| Kee Leasing Co. | $2,014,039 | $761,330 | 37.80 |
| 666 Leasing Co. | 8,573,805 | 4,137,017 | 48.25 |
| 670 Leasing Co. | 4,362,352 | 1,586,209 | 36.36 |
| 650 Leasing Co. | 2,657,644 | 1,339,771 | 50.41 |
| 652 Leasing Co. | 2,557,004 | 731,691 | 28.62 |
| 653 Leasing Co. | 2,592,171 | 483,157 | 18.64 |
| 667 Leasing Co. | 6,563,855 | 1,936,224 | 20.50 |
| Sun Leasing Co. | 7,404,599 | 3,269,459 | 44.15 |
| NY Sun Shipping | 9,454,505 | 8,921,975 | 94.37 |
| Phil Sun Shipping | 5,129,727 | 2,278,684 | 44.42 |
| Tropic Sun Shipping | 4,004,764 | 1,948,117 | 48.64 |
| Sun Transport, Inc. | 73,123,906 | 23,311,476 | 31.88 |
| Sun Oil Trading Co. | 20,037,455 | 710,113 | 3.54 |
| Sun Note Co. | 40,344,826 | 40,094,056 | 99.38 |
| North Sea Sun Oil Co. | 23,924,318 | 17,319,539 | 72.39 |
| | 212,744,970 | 108,828,818 | |

| 1986 | Gross income | Foreign gross income | Ratio Percent |
|---|---|---|---|
| Kee Leasing Co. | $2,013,346 | $260,455 | 12.94 |
| 666 Leasing Co. | 7,082,756 | 3,172,987 | 44.80 |
| 670 Leasing Co. | 3,533,401 | 1,496,424 | 42.35 |
| 650 Leasing Co. | 2,038,955 | 954,294 | 46.80 |
| Sun Leasing Co. | 6,194,365 | 2,679,882 | 43.26 |
| Millcreek Leasing Co. | 305,752 | -83,676 | 27.37 |
| Tropic Sun Shipping | 3,986,919 | 1,501,298 | 37.66 |
| Sun Transport, Inc. | 79,520,790 | 21,932,881 | 27.58 |
| Sunoco Overseas, Inc. | -108,199 | 290,314 | 100.00 |
| Sun Refining & Mktg. Co. | 672,597,605 | 1,095,517 | 0.16 |
| Sun Oil Trading Co. | 13,481,454 | 4,673,000 | 34.66 |
| Sun Co., Inc. | 760,884,991 | 23,864,572 | 3.14 |
| Sun Oil Intl. | 10,593,916 | 6,769,393 | 34.55 |
| North Sea Sun Oil Co. | 36,565,327 | 36,394.917 | 99.53 |
| Claymont Investment Co. | 513,112,873 | 111,203 | 00.02 |
| | 2,120,804,251 | 105,113,461 | |

In allocating and apportioning each member's interest expense to sources without the United States under one of the optional gross income methods described by section 1.861-8(e)(2)(vi), Income Tax Regs., petitioner started with the gross amount of each member's interest expense for the taxable year and did not offset that amount by the interest income earned by that member during the year.

As mentioned above, petitioner chose to use the foreign tax credit under section 901(a) in computing the tax liability of its affiliated group of corporations for consolidated return years 1982, 1983, 1984, and 1986. As to each of those years, the amount of foreign taxes for which a taxpayer could claim credit was subject to the overall limitation of section 904. Under that limitation, the amount of foreign tax credit could not exceed the tentative U.S. tax for the year (i.e., the U.S. tax before application of the foreign tax credit) multiplied by a fraction, the numerator of which is the taxable income from sources without the United States and the denominator of which is the entire taxable income. Sec. 904(a).

Generally, in the case of an affiliated group of corporations, the foreign tax credit is determined on a consolidated basis. Sec. 1.1502-4(c), Income Tax Regs. In computing the overall limitation under section 904(a)

for an affiliated group, the numerator of the limiting

fraction is an amount equal to the total of the separate

taxable incomes of the members of the group from sources

without the United States, with certain adjustments that

are not material to this case.  See sec. 1.1502-4(d)(1),

Income Tax Regs.  The denominator of the limiting fraction

under section 904(a) is the consolidated taxable income of

the group computed in accordance with section 1.1502-11,

Income Tax Regs.  Sec. 1.1502-4(d)(2), Income Tax Regs.

Thus, for each of the subject consolidated return years,

petitioner was required to compute the "taxable income from

sources without the United States" of each member of its

affiliated group of corporations.  Sec. 904(a).  The total

of those amounts is the numerator of the limiting fraction

under section 904(a).

In these proceedings, petitioner seeks to make two

changes in the method used to allocate and apportion

interest expenses for purposes of computing each member's

taxable income from sources without the United States.

First, petitioner seeks to apportion the interest expenses

of each member of its affiliated group using the asset

method described in section 1.861-8(e)(2)(v), Income Tax

Regs., for tax years 1982, 1983, and 1984, and using one

of the optional gross income methods described by section

1.861-8(e)(2)(vi), Income Tax Regs., for tax year 1986. As mentioned above, petitioner had used one of the optional gross income methods described by section 1.861-8(e)(2)(vi), Income Tax Regs., in apportioning interest expenses on each of the subject returns. Respondent concedes that petitioner is entitled to make this change, as long as all members joining the 1986 return use one of the optional gross income methods described by section 1.861-8(e)(2)(vi), Income Tax Regs.

The second change sought by petitioner, the change at the heart of the instant controversy, involves petitioner's assertion that each member's interest expense to be allocated and apportioned under section 1.861-8(e)(2), Income Tax Regs., for purposes of computing the overall limitation under section 904(a), is "net interest expense", i.e., interest expense for the year less interest income but not less than zero, rather than gross interest expense. Respondent asserts that this change is improper.

To quantify petitioner's position, the following schedule sets forth the interest expense incurred by each member of petitioner's affiliated group of corporations, the interest income earned by that member, and the net interest expense of that member; i.e., interest expense less interest income but not less than zero:

| 1982 | Interest expense | Interest income | Net interest expense |
|---|---|---|---|
| 650 Leasing Co. | $682,931 | $1,379,522 | -0- |
| Sun Leasing Co. | 4,729,086 | 1,512,776 | $3,216,310 |
| 666 Leasing Co. | 4,072,539 | 1,904,855 | 2,167,684 |
| 670 Leasing Co. | 1,830,136 | 1,740,970 | 89,166 |
| 673 Leasing Co. | 1,627,381 | 1,253,296 | 374,085 |
| 675 Leasing Co. | 1,983,276 | 836,661 | 1,146,615 |
| 652 Leasing Co. | 794,330 | 1,285,273 | -0- |
| Kee Leasing Co. | 581,235 | 13,373 | 567,862 |
| 653 Leasing Co. | 814,727 | 1,309,988 | -0- |
| 667 Leasing Co. | 3,286,585 | 2,639,109 | 647,476 |
| Millcreek Leasing Co. | 830,407 | 1,357,133 | -0- |
| DeSun Shipping | 47,658 | 135,470 | -0- |
| Eastern Sun Shipping | 37,115 | 82,228 | -0- |
| NY Sun Shipping | 9,970,340 | 854,008 | 9,116,332 |
| NJ Sun Shipping | 143,340 | 16,205 | 127,135 |
| PA Shipping | 46,423 | 133,771 | -0- |
| Phil Sun Shipping | 10,809,958 | 448,677 | 10,361,281 |
| Western Sun Shipping | 50,003 | 66,869 | -0- |
| Sun Transport Inc. | 3,650,045 | 99,840 | 3,550,205 |
| Sun Note Co. | 31,066,253 | 32,754,418 | -0- |
| North Sea Oil Co. | 65,897 | 1,176,482 | -0- |
| Totem Ocean Trailer | 46,949 | 1,668,617 | -0- |
| | 77,166,614 | 52,669,541 | 31,364,151 |

| 1983 | Interest expense | Interest income | Net Interest expense |
|---|---|---|---|
| 650 Leasing Co. | $612,220 | $684,172 | -0- |
| Sun Leasing Co. | 4,736,241 | 1,581,401 | $3,154,840 |
| 666 Leasing Co. | 4,084,197 | 1,707,485 | 2,376,712 |
| 670 Leasing Co. | 1,756,214 | 1,139,007 | 617,207 |
| 652 Leasing Co. | 714,282 | 631,498 | 82,784 |
| Kee Leasing Co. | 504,412 | 6,765 | 497,647 |
| 653 Leasing Co. | 736,315 | 658,732 | 77,583 |
| 667 Leasing Co. | 3,160,356 | 1,489,361 | 1,670,995 |
| MillCreek Leasing Co. | 742,214 | 2,132,982 | -0- |
| NY Sun Shipping | 9,849,306 | 727,159 | 9,122,147 |
| NJ Sun Shipping | 208,102 | 449,738 | -0- |
| Philadelphia Sun Shipping | 10,688,995 | 855,141 | 9,833,854 |
| Texas Sun Shipping | 33,963 | 704,193 | -0- |
| Tropic Sun Shipping | 474,700 | 569,955 | -0- |
| Sun Transport, Inc. | 2,644,781 | 980,197 | 1,664,584 |
| Heleasco Fifteen | 1,444,639 | 246,861 | 1,197,778 |
| Sun Note Co. | 25,667,812 | 37,161,016 | -0- |
| | 68,058,749 | 51,725,663 | 30,296,131 |

| 1984 | Interest expense | Interest income | Net interest expense |
|---|---|---|---|
| Kee Leasing Co. | $408,197 | $10,538 | $397,659 |
| 666 Leasing Co. | 4,083,327 | 2,209,163 | 1,874,164 |
| 670 Leasing Co. | 1,669,360 | 1,369,504 | 299,856 |
| 650 Leasing Co. | 536,038 | 715,947 | -0- |
| 652 Leasing Co. | 613,066 | 671,202 | -0- |
| 653 Leasing Co. | 636,635 | 704,840 | -0- |
| 667 Leasing Co. | 3,018,359 | 1,611,875 | 1,406,484 |
| Sun Leasing Co. | 4,689,864 | 2,044,830 | 2,645,034 |
| NY Sun Shipping | 9,712,823 | 532,530 | 9,180,293 |
| Phil Sun Shipping | 10,551,646 | 676,120 | 9,875,526 |
| Tropic Sun Shipping | 644,883 | 1,040,764 | -0- |
| Sun Transport, Inc. | 3,091,754 | 35,223 | 3,056,531 |
| Sun Oil Trading Co. | [1]2,114,469 | 16,303,956 | -0- |
| Sun Note Co. | 25,854,099 | 33,533,894 | -0- |
| North Sea Oil Co. | 7,681,288 | 2,196,279 | 5,485,009 |
| | 75,305,808 | 63,656,665 | 34,220,556 |

[1] See p.10, supra.

| 1986 | Interest expense | Interest income | Net interest expense |
|---|---|---|---|
| Kee Leasing Co. | $213,410 | $9,844 | $203,566 |
| 666 Leasing Co. | 3,907,731 | 736,783 | 3,170,948 |
| 670 Leasing Co. | 1,468,580 | 540,553 | 928,027 |
| 650 Leasing Co. | 404,732 | 130,367 | 274,365 |
| Sun Leasing Co. | 4,532,004 | 834,601 | 3,697,403 |
| Millcreek Leasing Co. | 435,448 | 662,752 | -0- |
| Tropic Sun Shipping | 644,829 | 1,148,919 | -0- |
| Sun Transport, Inc. | 2,356,829 | 646,275 | 1,710,554 |
| Sunoco Overseas, Inc. | 211,438 | 189,663 | 21,775 |
| Sun Refining & Mkt., Inc. | 44,588,973 | 23,675,379 | 20,913,594 |
| Sun Oil Trading Co. | 549,406 | 317,610 | 231,796 |
| Sun Co., Inc. | 157,687,537 | 937,176 | 156,750,361 |
| Sun Oil Int. | 7,190,703 | 12,824,523 | -0- |
| North Sea Oil Co. | 28,050,064 | 1,784,106 | 26,265,958 |
| Claymont Investment Co. | 217,180,793 | 505,319,941 | -0- |
| | 469,422,477 | 549,758,492 | 214,168,347 |

Petitioner argues that it is entitled to use the amount in column three of the above schedule, i.e., the net interest expense of each member of its affiliated group, as the starting point for allocating and apportioning that member's interest expense under section 1.861-8(e)(2), Income Tax Regs.

The parties have stipulated the amount of each member's interest expense to be allocated and apportioned to sources without the United States depending upon whether

netting is or is not permitted. These stipulations are summarized in the appendix to this Opinion.

In the appendix, each member's interest expense for 1982, 1983, and 1984 is apportioned to sources without the United States in accordance with the asset method described by section 1.861-8(e)(2)(v), Income Tax Regs. The parties have stipulated the ratio of each member's assets which relates to activities and properties that generated foreign source income during each year. See generally sec. 1.861-8(e)(2)(v), Income Tax Regs. Using that asset ratio, the amount of a member's interest expense to be apportioned to sources without the United States is computed, if netting is not permitted, by multiplying the ratio and the member's gross interest expense, or, if netting is permitted, by multiplying the ratio and the member's net interest expense.

In the appendix, each member's interest expense for 1986 is apportioned to sources without the United States in accordance with one of the optional gross income methods described by section 1.861-8(e)(2)(vi), Income Tax Regs. Generally, under that provision, assuming certain conditions are met, the deduction for interest is apportioned to sources within or without the United States ratably on the basis of a taxpayer's gross income. See id.

As shown in the appendix, the parties have stipulated two sets of gross income ratios for 1986, one set to be used assuming that netting is not permitted and the other set to be used assuming that netting is permitted. The amount of a member's interest expense to be apportioned to sources without the United States is computed, if netting is not permitted, by multiplying the first gross income ratio and the member's gross interest expense, or, if netting is permitted, by multiplying the second ratio and the member's net interest expense. The appendix has two schedules for 1986, one schedule summarizing the apportionment of gross interest (i.e., no netting) and one summarizing the apportionment of net interest (i.e., netting).

It appears that in computing the second set of gross income ratios for 1986, the ratios to be used if netting is permitted, the parties have adjusted the gross income of each member by subtracting therefrom the amount of interest income that is offset by interest expense. For example, in the case of Kee Leasing Co., the first income ratio of 12.94 percent, the ratio to be used in apportioning interest if netting is not permitted, was computed by dividing the company's gross income from sources without the United States, $260,455, by the company's gross income,

$2,013,345. On the other hand, the second income ratio of 13 percent, the ratio to be used in apportioning interest if netting is permitted, was computed after the amount of netted interest income, $9,844, was subtracted from the company's gross income, the denominator of the fraction. Thus, the second ratio of 13 percent was computed by dividing $260,455, the company's gross income from sources without the United States, by $2,003,501, the company's total gross income less the amount of netted interest ($2,013,345 minus $9,844).

Similar adjustments were made to the gross income of each of the other 14 members of petitioner's affiliated group for purposes of computing the second gross income ratio; i.e., the ratio to be used in computing the interest expense to be apportioned to sources without the United States, assuming that netting is permitted.

Furthermore, in the case of one of the 15 members of petitioner's affiliated group of corporations, North Sea Sun Oil Co., a similar adjustment was made to the numerator of the fraction that constitutes the gross income ratio. That is, the interest income earned by that company during 1986, $1,784,106, was subtracted from the company's foreign source gross income, $36,394,917, to arrive at $34,610,811, the numerator of the fraction. That amount was divided

by the excess of the company's total gross income, $36,565,327, over its interest income, $1,784,106, or $34,781,221, to arrive at the gross income ratio of 99.51 percent.

Thus, in computing the second gross income ratio for North Sea Sun Oil Co. under section 1.861-8(e)(2)(vi), Income Tax Regs., the ratio to be used if netting is permitted, the interest income earned by North Sea Sun Oil Co. during 1986 was subtracted from both the numerator and the denominator of the fraction. The interest income earned during 1986 by each of the other 14 members of plaintiff's affiliated group was subtracted only from the denominator of the fraction in computing the second gross income ratio for each of those companies. We infer from this that the interest income earned by North Sea Sun Oil Co. in 1986 constituted gross income from sources without the United States, whereas the interest income earned by each of the other members of petitioner's affiliated group for 1986 constitutes gross income from sources within the United States.

The following schedule summarizes the revenue impact of the position of each of the parties with respect to the subject issue. It shows, based upon the parties' stipulation, the aggregate interest expense apportioned to

sources without the United States for each of the years in issue as claimed on petitioner's consolidated returns, the aggregate interest expense to be apportioned to foreign sources if there is no netting of interest expense and interest income, and the aggregate amount to be so apportioned if there is netting of interest expense and interest income.  The last column of the schedule shows the difference between the amount of interest to be apportioned to sources without the United States, assuming that there is no netting, and the amount of interest to be so apportioned, assuming that there is netting:

Interest expense allocated and apportioned to sources without the United States

| Year | Per return | No netting | Netting | Difference |
|------|-----------|-----------|---------|-----------|
| 1982 | $55,704,104 | $55,155,126 | $17,444,643 | $37,710,483 |
| 1983 | 50,434,920 | 47,362,922 | 17,200,130 | 30,162,792 |
| 1984 | 54,658,298 | 50,150,909 | 19,831,268 | 30,319,641 |
| 1986 | 45,205,129 | 45,517,890 | 37,689,610 | 7,828,280 |
| | 206,002,451 | 198,186,847 | 92,165,651 | 106,021,196 |

Thus, as shown above, if there is netting, then the aggregate interest expense to be allocated and apportioned to sources without the United States in computing the overall limitation on petitioner's foreign tax credit under section 904(a) would be substantially less for each of the 4 years in issue than the interest expense to be allocated and apportioned to sources without the United States if there is no netting.  This difference is $37,710,483, $30,162,792, $30,319,641, and $7,828,280, for the years in

issue, respectively. Thus, the effect of netting would be to substantially increase petitioner's income from sources without the United States, the numerator of the limiting fraction under section 904(a), and to substantially increase the amount of petitioner's foreign tax credit for each of the years in issue.

Both parties rely on the regulations promulgated under the source rules, viz sections 861 through 864, especially section 1.861-8(e)(2), Income Tax Regs., to support their position that netting is permitted or that netting is not permitted. Petitioner does not contend that the regulations are contrary to the statute or unlawful in any respect. Therefore, as presented by the parties, the issue in this case is whether the netting of interest income and interest expense is permitted by the regulations promulgated under sections 861 through 864, principally section 1.861-8(e)(2), Income Tax Regs., that were in effect during the years 1982, 1983, 1983, and 1986, generally referred to herein as the subject regulations.

At the outset, we note that the principal regulation at issue in this case, section 1.861-8(e)(2), Income Tax Regs., was adopted on January 3, 1977, effective for taxable years beginning after December 31, 1976

(hereinafter referred to as the 1977 Regulation).
42 Fed. Reg. 1197 (Jan. 6, 1977).

In 1988, the Secretary of the Treasury issued temporary regulations dealing with the allocation and apportionment of interest expense and certain other expenses for purposes of the foreign tax credit rules and certain other international tax provisions to reflect the revisions to those rules made by the passage of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1215, 100 Stat. 2544. Section 1.861-9T(a), Temporary Income Tax Regs., 53 Fed. Reg. 35477 (Sept. 14, 1988), superseded the 1977 regulation for years beginning after December 31, 1986. Section 1.861-9T(a) contains virtually the same language found in section 1.861-8(e)(2)(i) and (ii) regarding the allocations and apportionment of interest expenses. In addition, section 1.861-9T(a), Temporary Income Tax Regs., supra, explicitly provides that "the term interest refers to the gross amount of interest expense incurred by a taxpayer in a given year." (Emphasis added.) Therefore, the 1988 temporary regulation explicitly prohibits netting for tax years beginning after December 31, 1986. The 1988 temporary regulations were not given retroactive effect and thus do not apply to the years in issue in this case.

See sec. 1.861-8T(h), Temporary Income Tax Regs., 53 Fed. Reg. 35477 (Sept. 14, 1988).

We do not agree with petitioner's contention that, by promulgating the new rules without retroactive effect, the Secretary of the Treasury indicated "that the express restrictive language requiring the use of gross interest expense for purposes of allocation and apportionment was intended as a change, rather than a clarification, of prior law." To the contrary, the 1988 temporary regulations, including section 1.861-9T(a), Temporary Income Tax Regs., supra, were promulgated to reflect the revisions made by the Tax Reform Act of 1986, including the enactment of section 864(e), which substantially changed some of the rules for the allocation and apportionment of interest expenses. These new provisions were made effective, for the most part, for tax years beginning after December 31, 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1215(c)(1), 100 Stat. 2545. It was appropriate to make the regulations reflecting those changes effective at the same time. In these circumstances, we do not believe that promulgating the new rules without retroactive effect suggests that the sentence in section 1.861-9T(a), Temporary Income Tax Regs., supra, quoted above, containing the words, "the gross amount of interest expense", was

intended as a change, rather than a clarification, of prior law.

The subject regulations are intended to be used in conjunction with certain "operative sections" of the Code which require the determination of the taxable income of the taxpayer from specific sources or activities. See sec. 1.861-8(f)(1), Income Tax Regs. The overall limitation on the foreign tax credit provided in section 904(a) is one such operative section. See id.

Under the subject regulations, the first step in determining a taxpayer's taxable income from a particular source or activity is to categorize the taxpayer's gross income into different groupings. See sec. 1.861-8(a)(1), (2), (4), Income Tax Regs. The regulations use the term "statutory grouping of gross income" to mean the gross income from a specific source or activity which must first be determined in order to arrive at taxable income from such specific source or activity under an operative section. Sec. 1.861-8(a)(4), Income Tax Regs. Gross income from other sources or activities is referred to as the "residual grouping of gross income". Id.

The overall limitation of section 904(a), the operative section in this case, requires the taxpayer to determine taxable income from sources without the United

States.  Thus, the "statutory grouping of gross income" in this case is gross income from sources without the United States and the "residual grouping of gross income" is gross income from sources within the United States.  See sec. 1.861-8(a)(4), (f)(1), Income Tax Regs.

The term "gross income from sources without the United States", the statutory grouping of gross income in this case, consists of those items of gross income specified in section 862(a), plus the items of gross income allocated or apportioned to such sources in accordance with section 863(a).  Sec. 1.861-1(a)(2), Income Tax Regs.  Similarly, "gross income from sources within the United States", the residual grouping of gross income in this case, consists of those items of gross income specified in section 861(a), plus the items of gross income allocated or apportioned to such sources in accordance with section 863(a).  Sec. 1.861-1(a)(1), Income Tax Regs.

For example, in the case of interest income, section 861(a)(1) provides that, as a general rule, the interest on bonds, notes, or other interest-bearing obligations of residents of the United States, corporate or otherwise, shall be treated as income from sources within the United States.  See sec. 1.861-2(a), Income Tax Regs.  Section 862(a)(1) provides that interest income other than that

derived from sources within the United States shall be treated as income from sources without the United States. See sec. 1.862-1(a)(1)(i), Income Tax Regs.

The record in the instant case does not expressly provide the source of the interest income earned by any member of petitioner's affiliated group of corporations during any of the years in issue. Nevertheless, we infer that the interest income of petitioner's affiliated corporations, for the most part, would be treated under the source rules as U.S. source income. Otherwise, if the interest income of petitioner's affiliated corporations were treated as foreign source income, then, in each case, the interest income would be included in the numerator of the limiting fraction under section 904(a) and would offset the interest expenses in that grouping. Thus, if the interest income of petitioner's affiliated corporations were foreign source income, netting would have little or no impact on the amount of foreign tax credit. This inference is confirmed in the case of the interest income earned by the members of petitioner's group for 1986, as discussed above.

After finding the source of each item of the taxpayer's gross income and grouping the items of gross income into the statutory and residual groupings, the next

step in determining taxable income from a specific source or activity is to allocate and apportion the taxpayer's "expenses, losses, and other deductions" to each of the groupings of gross income. Sec. 1.861-8(a)(2), (b), and (c), Income Tax Regs. Taxable income from a particular source or activity is the difference between the aggregate items of gross income in that grouping and the sum of the expenses, losses, and other deductions that are properly allocated and apportioned thereto, and a ratable portion of any expenses, losses, or other deductions that cannot definitely be allocated to an item or class of gross income. See secs. 861(b), 862(b); secs. 1.861-1, 1.861-8(a)(1), Income Tax Regs.

The regulations provide rules of general applicability governing the allocation and apportionment of expenses, losses, and other deductions, see sec. 1.861-8(a), (b), (c), and (d), Income Tax Regs., as well as rules governing the allocation and apportionment of specific deductions, see sec. 1.861-8(e)(2) through (11), Income Tax Regs. Specific rules for the allocation and apportionment of interest expense are provided in section 1.861-8(e), Income Tax Regs.

The principal rule of general applicability is that a taxpayer's expenses, losses, and other deductions are to be

allocated to the "class of gross income" to which each deduction is "definitely related". Sec. 1.861-8(a)(3), (b)(1), Income Tax Regs. A deduction is considered definitely related to a class of gross income if it is incurred as a result of, or incident to, an activity or in connection with property from which such class of gross income is derived and, thus, the deduction bears a factual relationship to the class of gross income. Sec. 1.861-8(b)(1) and (2), Income Tax Regs. Classes of gross income are not predetermined but must be determined on the basis of the deductions to be allocated. Sec. 1.861-8(b)(1), Income Tax Regs. They may consist of one or more items of gross income enumerated in section 61, such as compensation for services, gross income derived from business, gains derived from dealings in property, interest, rents, royalties, dividends, etc. Sec. 1.861-8(a)(3), (b)(1), Income Tax Regs.

If a deduction is definitely related to a class of gross income that is included in more than one grouping of gross income, or if the deduction is definitely related to all of the taxpayer's gross income, then the regulations further provide that the deduction shall be apportioned "by attributing the deduction to gross income (within the class to which the deduction has been allocated) which is in the

statutory grouping or in each of the statutory groupings and to gross income (within the class) which is in the residual grouping." Sec. 1.861-8(c)(1), Income Tax Regs. This attribution must reflect to a reasonably close extent the factual relationship between the deduction and the grouping of gross income. See id. The method of apportionment for a particular deduction can take into consideration various bases and factors, such as a comparison of units sold attributable to the statutory grouping and to the residual grouping, a comparison of the amount of gross sales or receipts, a comparison of the costs of goods sold, a comparison of profit contribution, a comparison of expenses incurred, assets used, salaries paid, space utilized, and time spent which are attributable to the activities or properties giving rise to the class of gross income, and a comparison of the amount of gross income in the statutory grouping with the amount in the residual grouping. See id.

Finally, if the deduction is not definitely related to any gross income, then the regulations provide that it is to be apportioned ratably between the statutory grouping and (or among the statutory groupings) and the residual grouping in proportion to the amount of gross income in

each grouping.  See sec. 1.861-8(b)(5), (c)(2), Income Tax Regs.

Thus, under the rules of general applicability, the approach of the regulations, with several exceptions, is that every deduction has a definite factual relationship to a particular class of gross income which constitutes less than all of the taxpayer's gross income.  Based upon that approach, the rules of general applicability require each deduction to be allocated to the related class of gross income and to be apportioned, on some reasonable basis, to the statutory and residual groupings of gross income.

The regulations take a different approach in the specific rules governing the allocation and apportionment of interest expenses, set forth in section 1.861-8(e)(2), Income Tax Regs.  The regulations describe this approach as follows:

> (2) Interest--(i)  In general.  The method of allocation and apportionment for interest set forth in this paragraph (e)(2) is based on the approach that money is fungible and that interest expense is attributable to all activities and property regardless of any specific purposes for incurring an obligation on which interest is paid.  This approach recognizes that all activities and property require funds and that management has a great deal of flexibility as to the source and use of funds.  Normally, creditors of a taxpayer subject the money advanced to the taxpayer to the risk of the taxpayer's entire activities and look to the general credit of the

taxpayer for payment of the debt.  When money is borrowed for a specific purpose, such borrowing will generally free other funds for other purposes and it is reasonable under this approach to attribute part of the cost of borrowing to such other purposes.  For the method of determining the interest deduction allowed to foreign corporations under section 882(c), see sec. 1.882-5. [Sec. 1.861-8(e)(2)(i), Income Tax Regs.]

This is the provision of the regulations on which petitioner principally relies, sec. 1.861-8(e)(2)(i), Income Tax Regs.  Based on the above approach, the regulations provide as follows:

the aggregate of deductions for interest shall be considered related to all income producing activities and properties of the taxpayer and, thus, allocable to all the gross income which the income producing activities and properties of the taxpayer generate, have generated, or could reasonably have been expected to generate. [Sec. 1.861-8(e)(2)(ii), Income Tax Regs.]

After stating the general rule in section 1.861-8(e)(2)(i), Income Tax Regs., that interest expense is "allocable to all gross income" of the taxpayer, the regulations provide various methods to apportion the taxpayer's interest expense between the statutory grouping of gross income (or among the statutory groupings of gross income) and the residual grouping.  See sec. 1.861-8(e)(2)(v) and (vi), Income Tax Regs.  Under the

"asset method", the deduction for interest is apportioned, generally, in accordance with the value (book value or fair market value) of the assets utilized or invested in the activity or property. See sec. 1.861-8(e)(2)(v), Income Tax Regs. This is the method that petitioner wishes to use for tax years 1982, 1983, and 1984, as mentioned above. Under the "optional gross income methods", the deduction for interest is apportioned, generally, on the basis of the gross income in the statutory grouping or groupings and in the residual grouping. Sec. 1.861-8(e)(2)(vi), Income Tax Regs. This is the method that petitioner wishes to use for tax year 1986, as mentioned above.

Significantly, the regulations provide an exception that applies in the case of interest incurred specifically to purchase specific property. See sec. 1.861-8(e)(2)(iv), Income Tax Regs. In that case, the interest is treated as definitely related to the gross income derived from the property and is apportioned accordingly. See id. In order for this exception to apply, certain facts and circumstances enumerated in the regulations must be found. These include the fact that the indebtedness was incurred to purchase the specific property, the fact that the proceeds of the loan were actually applied to that purpose, the fact that the property is the only security for the

loan, the fact that the return (cashflow) on or from the property will be sufficient to satisfy the payments under the loan, and the fact that the loan agreements place restrictions on the disposal or use of the property. See id.

Where it is found that an interest deduction is definitely related solely to specific property, the interest deductions are allocated solely to the gross income derived from the specific property. See sec. 1.861-8(e)(2)(iv)(B), Income Tax Regs. Thus, the income from the specific property is placed in a grouping of gross income in accordance with the usual rules for sourcing gross income, see secs. 1.861-2 through 1.861-7, Income Tax Regs., and the interest deduction is directly allocated to such gross income, see sec. 1.861-8(e)(2)(iv)(B), Income Tax Regs.

Finally, in the case of nonbusiness interest, such as interest paid by an individual on a mortgage on his personal residence, the interest is treated as not definitely related to any class of gross income, see sec. 1.861-8(b)(5), (c)(2), Income Tax Regs., and is apportioned ratably between the statutory grouping (or among the statutory groupings) and the residual grouping in

proportion to the amount of gross income in each grouping, see sec. 1.861-8(e)(2)(iii), Income Tax Regs.

Petitioner argues that, under the version of the section 861 regulations in effect during the years in issue, it "may allocate and apportion net interest, rather than gross, interest expense" in calculating taxable income from sources without the United states for purposes of section 904(a). Petitioner's position is based on its reading of section 1.861-8(e)(2)(i), Income Tax Regs., which is quoted above. Petitioner emphasizes that section 1.861-8(e)(2)(i), Income Tax Regs., states, in general, that the method of allocation and apportionment for interest is based on the approach that "money is fungible", and recognizes that "all activities and property require funds" and that "management has a great deal of flexibility as to the source and use of funds." Id. Petitioner notes that the regulation refers to "interest" as "the cost of borrowing" in the context of "the fungibility of money". Based thereon, petitioner argues that the language of the regulation "raises a contextual ambiguity with respect to the precise definition of 'interest' and 'the cost of borrowing'." According to petitioner, the term "interest" can mean either net interest or gross interest, depending on the context. Petitioner argues that, in the context of

the subject regulation which is based upon the fungibility of money approach, and, absent an express rule to the contrary, the term "interest" should be recognized to mean net interest expense; i.e., gross interest expense less interest income.

Petitioner asserts that the following "simplified example", demonstrates that recognizing "interest" or "the cost of borrowing" as net interest expense, implements the fungibility of money principle:

> Assume * * * that a business needs $800,000, and has $1 million in short-term instruments bearing interest at 10 percent per year, and the capacity to borrow funds with no fees and at 10 percent per year. The business can obtain the $800,000 by reducing its holding of short-term interest bearing instruments or by borrowing. Either choice has exactly the same effect on the net income of the business. If the business borrows, interest expense will increase by $80,000 per year; if the business sells the instruments, interest income will decrease by $80,000 per year.

Petitioner argues that the two sources of funds in the above example, incurring debt and selling short-term interest bearing assets, are fungible and should be treated as fungible under the source rules, as would take place by recognizing interest as net interest expense. Petitioner also argues that "a corollary to the fungibility of these two sources of funds is the fact that reduced interest

income is essentially equivalent to increased interest expense."

Petitioner gives the following variation of the above example to illustrate its position that taxpayers in the same economic situation should be treated the same by interpreting "interest" and "cost of borrowing", as used in section 1.861-8(e)(2)(i), Income Tax Regs., to mean net interest:

> Suppose business A has an immediate need of $800,000 and uncertain future needs, and a line of credit of $1 million at 10 percent, and immediately draws $800,000 on the line of credit. The interest expenses on the $800,000 would be $80,000, rather than $100,000. In contrast, business B has a substantially identical need of $800,000 immediately and uncertain future needs, but has no line of credit. So, business B obtains a loan from a bank for $1 million and invests the surplus $200,000 in short-term instruments bearing 10 percent. Although business B's gross interest expense would be $100,000, its cost of borrowing would be best described as $80,000 ($100,000-$20,000).

Petitioner argues that in the context of section 1.861-8(e)(2), Income Tax Regs., which is based upon the "fungibility of money" and management's "flexibility as to sources of funds", the two firms in the above example are in the same economic situation and the cost of borrowing incurred by both firms should be treated the same, as would take place by recognizing interest as net interest expense.

Petitioner relies heavily on the Opinion of this Court in <u>Bowater, Inc., & Subs. v. Commissioner</u>, 101 T.C. 207 (1993), revd. 108 F.3d 12 (2d Cir. 1997), involving the same issue, viz, whether a taxpayer may offset interest income and interest expense in determining the amount of the interest deduction to be allocated and apportioned under section 1.861-8(e)(2), Income Tax Regs. In that case, the issue arose in the context of computing the combined taxable income (CTI) of the taxpayer and its domestic international sales corporation (DISC) attributable to qualified export receipts derived from the sale by the DISC of export property. See <u>Bowater, Inc., & Subs. v. Commissioner</u>, <u>supra</u>. Generally, in computing CTI attributable to qualified export receipts, expenses are to be allocated and apportioned in a manner consistent with the rules set forth in section 1.861-8, Income Tax Regs. Sec. 1.994-1(c)(6)(iii), Income Tax Regs. In <u>Bowater, Inc., & Subs. v. Commissioner</u>, <u>supra</u>, we held that interest expenses can be offset by interest income before the net interest expense is apportioned under section 1.861-8(e)(2), Income Tax Regs. <u>Id.</u>

Petitioner argues that we should follow <u>Bowater, Inc., & Subs. v. Commissioner</u>, <u>supra</u>, in the instant case, as we have on two prior occasions, <u>Coca Cola Co. v. Commissioner</u>,

106 T.C. 1, 6 (1996), and Computervision Intl. Corp. v. Commissioner, T.C. Memo. 1996-131, vacated and remanded 164 F.3d 73 (1st Cir. 1999). Petitioner also argues that we should reject the "faulty" reasoning of the Court of Appeals for the Second Circuit in its opinion reversing this Court's Bowater, Inc. opinion. See Bowater, Inc., & Subs. v. Commissioner, 108 F.3d 12 (2d Cir. 1997).

Respondent argues that the subject regulations are not ambiguous. To the contrary, respondent states that the "plain language of the Regulations" promulgated under section 861 "[mandates] the apportionment of interest expense among all income producing activities, including those that generate interest income, and [rejects] the 'netting' of interest expense and interest income". Respondent argues that this is made clear by two examples in the regulations, Examples (1) and (24) of section 1.861-8(g), Income Tax Regs., in which "'gross' interest expense, i.e., without reduction for interest income, [is apportioned] among each of the hypothetical taxpayer's income producing activities, including those that generate interest income." Respondent also argues that petitioner misinterprets "the Regulation's fungibility concept". Finally, respondent argues that petitioner's position ignores the fact that the regulations promulgated under

section 861 apportion "deductions" which, in the case of interest expenses means the amount deductible under section 163. In this connection, respondent points out that section 1.861-8(a)(2), Income Tax Regs., is headed "Allocation and apportionment of deductions in general", and that "there is nothing in the Regulations suggesting that the word 'deduction' should be defined differently under Treas. Reg. §1.861-8 than elsewhere in the Internal Revenue Code."

We disagree with petitioner that the language of section 1.861-8(e)(2)(i), Income Tax Regs., "raises a contextual ambiguity with respect to the precise definition of the terms 'interest expense' and 'the cost of borrowing.'" We also disagree that those terms were intended, or can be interpreted in the context of section 1.861-8(e)(2), Income Tax Regs., to refer to "net interest expense." In our view, the allocation and apportionment of net interest expense under section 1.861-8(e)(2), Income Tax Regs., is not permitted by the regulations; it would subvert the operation of the source rules, and it would lead to incongruous and erroneous results.

We believe that petitioner misconstrues section 1.861-8(e)(2)(i), Income Tax Regs., and finds an ambiguity where none exists. As discussed above, the rules of general

applicability for the allocation and apportionment of expenses, losses, and other deductions, set forth in section 1.861-8(a), (b), and (c), Income Tax Regs., are based on the approach that an expense, loss, or other deduction should be allocated to a class of income, composed of less than the taxpayer's entire gross income, as to which the deduction bears a factual relationship, and then, if necessary, apportioned between or among the statutory and residual groupings of gross income. See sec. 1.861-8(a), (b), and (c), Income Tax Regs. On the other hand, the rules that specifically govern the allocation and apportionment of interest expenses, with two limited exceptions, take the approach that interest expenses are related to all income-producing activities and properties of the taxpayer and thus are allocable to all of the taxpayer's gross income. See sec. 1.861-8(e)(2)(i) and (ii), Income Tax Regs.

The regulations state that the different approach for allocating interest expenses is based on the fact that "money is fungible and that interest expense is attributable to all activities and property regardless of any specific purpose for incurring an obligation on which interest is paid." Sec. 1.861-8(e)(2)(i), Income Tax Regs. Thus, the regulations use the phrase "money is fungible"

in section 1.861-8(e)(2)(i), Income Tax Regs., simply to explain why the rules specifically dealing with interest expenses allocate interest expenses to all of the taxpayer's gross income, whereas the rules of general applicability treat other deductions as related to one or more classes of income.

In order to facilitate our discussion of the positions of the parties, it is helpful to review the following example. Assume that during the year a taxpayer, a domestic corporation, had gross operating income from domestic sales of $800,000, gross operating income from foreign sales of $500,000, operating expenses of $300,000 attributable to domestic sales, and operating expenses of $200,000 attributable to foreign sales. Assume further that, during the same year, the taxpayer realized interest income from U.S. sources of $200,000 and interest expense of $375,000. Finally, assume that the ratio of the value of the assets which relate to activities and properties that generate foreign source income to the value of all of the taxpayer's assets is the same as the ratio of the taxpayer's gross income from foreign sources to total gross income. Based upon these facts, the computation of the taxpayer's taxable income from U.S. and foreign sources, assuming that netting is not permitted, and the proportion

of each to the taxpayer's entire taxable income, as contemplated by section 904(a), are shown in the following schedule:

| No netting | Total | U.S. source | Foreign source |
|---|---|---|---|
| Gross income | | | |
| Operating income | $1,300,000 | $800,000 | $500,000 |
| Interest income | 200,000 | 200,000 | -0- |
| Total | 1,500,000 | 1,000,000 | 500,000 |
| Gross income ratio | 100% | 66.67% | 33.33% |
| Expenses | | | |
| Operating expenses | 500,000 | 300,000 | 200,000 |
| Interest expense | 375,000 | 250,000 | 125,000 |
| Total | 875,000 | 550,000 | 325,000 |
| Taxable income | 625,000 | 450,000 | 175,000 |
| Section 904(a) ratio | 100% | 72% | 28% |

Petitioner's position, is that section 1.861-8(e)(2)(i), Income Tax Regs., permits a taxpayer to offset interest expense with interest income before "net interest expense" is allocated and apportioned under section 1.861-8(e)(2), Income Tax Regs., to the different groupings of gross income for purposes of computing the taxpayer's taxable income in each grouping. Based on petitioner's position, the computation of the taxpayer's taxable income from U.S. and foreign sources, and the proportion of each to the taxpayer's entire taxable income as contemplated by section 904(a), are shown in the following schedule:

| With netting | Total | U.S. source | Foreign source |
|---|---|---|---|
| Gross income | | | |
|   Operating income | $1,300,000 | $800,000 | $500,000 |
|   Interest income | -0- | -0- | -0- |
|     Total | 1,300,000 | 800,000 | 500,000 |
| Gross income ratio | 100% | 61.54% | 38.46% |
| | | | |
| Expenses | | | |
|  Operating expenses | 500,000 | 300,000 | 200,000 |
|  Interest expense | 175,000 | 107,692 | 67,308 |
|    Total | 675,000 | 407,692 | 267,308 |
| | | | |
| Taxable income | 625,000 | 392,308 | 232,692 |
| | | | |
| Sec. 904(a) ratio | 100% | 62.7692% | 37.2308% |

Thus, in this example, the netting of interest expense and interest income has the effect of increasing, from 28 percent to 37.23 percent, the proportion of the taxpayer's taxable income, $625,000, that is attributable to foreign sources.

There are several consequences of netting that should be noted. First, in order for the netting computation to arrive at the taxpayer's correct taxable income, i.e., $625,000 in the above example, the taxpayer's total gross income must be reduced by the amount of interest income that is offset against interest expense. This adjustment is necessary because only net interest expense is allocated and apportioned to the statutory grouping (i.e., foreign source) and the residual grouping (i.e., United States source) under section 1.861-8(e)(2), Income Tax Regs. Accordingly, the aggregate deductions used in the netting computation are less than actual aggregate deductions.

Thus, taxpayer's taxable income, i.e., the difference between the gross income in both groupings and the aggregate expenses allocated and apportioned thereto, will be overstated, unless the taxpayer's total gross income is reduced by the amount of interest income that was offset.

Continuing the above example, if interest expense and interest income are netted for purposes of allocating interest expenses but the amount of interest income offset by netting is not removed from the taxpayer's gross income, then the computation contemplated by section 904(a) would be as follows:

| With netting | Total | U.S. source | Foreign source |
|---|---|---|---|
| Gross income | | | |
| Operating income | $1,300,000 | $800,000 | $500,000 |
| Interest income | 200,000 | 200,000 | -0- |
| Total | 1,500,000 | 1,000,000 | 500,000 |
| Gross income ratio | 100% | 66.67% | 33.33% |
| | | | |
| Expenses | | | |
| Operating expenses | 500,000 | 300,000 | 200,000 |
| Interest expense | 175,000 | 116,667 | 58,333 |
| Total | 675,000 | 416,667 | 258,333 |
| | | | |
| Taxable income | 825,000 | 583,333 | 241,667 |
| | | | |
| Sec. 904(a) ratio | [1]132% | [1]93.3333% | [1]38.6667% |

[1] Based upon taxable income of $625,000.

Thus, as illustrated above, if the taxpayer's gross income is not reduced, then the taxpayer's taxable income, $625,000, would be overstated by the amount of the interest income that is offset by interest expense, $200,000, and the section 904(a) ratio would not be based upon the

taxpayer's "entire taxable income for the same taxable year".  Sec. 904(a).  This raises a question about where in the regulations is there authority to reduce "gross income" by the amount of netted interest.

Second, an equally important consequence of netting is the fact that it increases the ratio under section 904(a), and thus increases the amount of foreign tax credit, only to the extent that the interest income that is absorbed by interest expense in the netting process is from U.S. sources.  To the extent that a relatively greater amount of the interest income absorbed in the netting process is from foreign sources, then netting produces a lower ratio under section 904(a) than not netting.

In the above example, we assumed that all of the interest income, $200,000, was from U.S. sources.  In that case, the section 904(a) ratio computed without netting was 28 percent but was increased to 37.23 percent by netting.  On the other hand, if we assume that the interest income is entirely from foreign sources, then the section 904(a) ratio, without netting, is 52 percent, computed as follows:

| No netting | Total | U.S. source | Foreign source |
|---|---|---|---|
| Gross income | | | |
|   Operating income | $1,300,000 | $800,000 | $500,000 |
|   Interest income | 200,000 | -0- | 200,000 |
|   Total | 1,500,000 | 800,000 | 700,000 |
| Gross income ratio | 100% | 53.33% | 46.67% |
| Expenses | | | |
|  Operating expenses | 500,000 | 300,000 | 200,000 |
|  Interest expense | 375,000 | 200,000 | 175,000 |
|   Total | 875,000 | 500,000 | 375,000 |
| Taxable income | 625,000 | 300,000 | 325,000 |
| Sec. 904(a) ratio | 100% | 48% | 52% |

If interest expense and interest income are netted, however, the ratio is reduced to 37.23 percent.  Thus, even though the taxpayer received all of his interest income from foreign sources under the regulations dealing with interest income, sec. 1.861-2, Income Tax Regs., netting disregards the source of the interest income that is absorbed by interest expenses and causes the taxpayer to obtain the same foreign tax credit as another taxpayer who realized interest income entirely from U.S. sources.  This example demonstrates that the netting of interest expense and interest income which petitioner argues arises from section 1.861-8(e)(2)(i), Income Tax Regs., fails to take into account the source of the interest income, and it causes interest income from entirely different sources to be treated the same.

In our view, petitioner's position that it "may allocate and apportion net, rather than gross, interest expense under section 1.861-8(e)(2), Income Tax Regs." is foreclosed by the language of that regulation. Section 1.861-8(e)(2)(ii), Income Tax Regs., provides that "the aggregate of deductions for interest" are allocable to "all the gross income" of the taxpayer for the year. As we read it, section 1.861-8(e)(2)(ii), Income Tax Regs., thus directs that the gross amount of the taxpayer's interest deductions, i.e., the aggregate of deductions for interest, be allocated to all of the taxpayer's gross income. In effect, section 1.861-8(e)(2)(ii), Income Tax Regs., forecloses petitioner's position that net interest expense, i.e., less than "the aggregate of deduction for interest", can be allocated to less than "all of the taxpayer's gross income", i.e., the excess of the taxpayer's gross income over the portion of the taxpayer's interest income that is offset by interest expenses.

Furthermore, petitioner's position that it "may allocate and apportion net, rather than gross, interest expense" is foreclosed by sections 861(a)(1), 862(a)(1), and the regulations promulgated thereunder, including sections 1.861-2(a) and 1.862-1(a), Income Tax Regs. Those

provisions define "gross income from sources within the United States" and "gross income from sources without the United States" to include all of the interest income earned by the taxpayer during the taxable year.  Secs. 1.861-2(a), 1.862-1(a), Income Tax Regs.  In computing gross income from sources within and without the United States, neither the statute nor the regulations contemplate that the portion of the taxpayer's gross income consisting of interest income for the year will be reduced or entirely offset by interest expenses.

As shown in the hypothetical example discussed above, such a reduction of the amount of the taxpayer's gross income would be necessary in a netting computation. Otherwise, the computation would overstate the taxpayer's taxable income for the year by the interest income that is offset by interest expense.  The adjustment to gross income that would be necessary is depicted in the computation set forth in the hypothetical discussed above. It is similar to the adjustment that the parties made in computing the taxpayer's interest expense for 1986 as shown in the appendix.

Moreover, petitioner's position that it is entitled to allocate net interest expense under section 1.861-8(e)(2),

Income Tax Regs., means that the taxpayer's interest income, to the extent that it is offset by interest expense, is not included in the groupings of gross income, i.e. gross income from sources within and without the United States, contrary to sections 861(a)(1) and 862(a)(1). Sec. 861(a)(1). Thus, in our view, interest netting would subvert the operation of the source rules.

Generally, as discussed above, the source rules operate by assigning items of gross income to different groupings of gross income, such as income from sources within and without the United States, in accordance with standards set out in the statute, and by allocating and apportioning the taxpayer's expenses, losses, and other deductions to the different groupings. Items of gross income that constitute interest are assigned to groupings of gross income from sources within and without the United States generally in accordance with the residence of the payor. See sec. 1.861-2, Income Tax Regs.

Under interest netting, interest income is offset by interest expense and only net interest expense is allocated and apportioned under the source rules. In effect, the source of the interest income that is offset is not taken into account in the groupings of gross income and taxable

income, as contemplated under the source rules.  Netting would, thus, subvert the operation of those rules.

Netting would also lead to the incongruous and erroneous results depicted in the hypothetical example discussed above in which a taxpayer who realized interest income entirely from foreign sources is treated the same as a taxpayer who realized the same interest income entirely from United States sources.  As discussed above, to the extent that a relatively greater amount of interest income absorbed in the netting process is from foreign sources, then netting actually produces a lower taxable income from foreign sources than not netting.

As mentioned above, the issue in this case was first decided in connection with the 1977 Regulations, in Bowater, Inc., & Subs. v. Commissioner, 101 T.C. 207 (1993).  In light of the opinion of the U.S. Court of Appeals for the Second Circuit reversing our opinion in Bowater, Inc., it is appropriate to reconsider our Bowater, Inc. opinion.  It is also appropriate to reconsider Bowater, Inc., in light of the opinion of the U.S. Court of Appeals for the Fifth Circuit in Dresser Indus., Inc. v. United States, 238 F.3d 603 (5th Cir. 2001), in which that court holds that interest netting is not permitted

under section 1.861-8(e)(2), Income Tax Regs.  In this connection, we note that our opinion in <u>Bowater, Inc.</u>, in part, had relied upon the reasoning of a prior opinion of the U.S. Court of Appeals for the Fifth Circuit involving the predecessor of the 1977 regulation, <u>Dresser Indus., Inc. v. Commissioner</u>, 911 F.2d 1128 (5th Cir. 1990), revg. 92 T.C. 1276 (1989).  Following our reconsideration of this issue, we now agree with both the U.S. Courts of Appeals for the Second and Fifth Circuits that the subject regulation, section 1.861-8(e)(2), Income Tax Regs., does not permit the netting of interest income and interest expense.  In light of that, we hereby overrule our opinion in <u>Bowater, Inc., & Subs. v. Commissioner</u>, 101 T.C. 207 (1993).

For reasons set forth above,

<u>An appropriate order will be issued granting respondent's motion in limine.</u>

Reviewed by the Court.

SWIFT, GERBER, RUWE, COLVIN, HALPERN, BEGHE, CHIECHI, LARO, FOLEY, VASQUEZ, GALE, and MARVEL, <u>JJ.</u>, agree with this opinion.

WELLS and THORNTON, <u>JJ.</u>, did not participate in the consideration of this opinion.

## Appendix

| 1982 | Interest expense | Net interest expense | Asset ratio percent | Interest apportioned to foreign source income | |
|---|---|---|---|---|---|
| | | | | No netting | Netting |
| 650 Leasing Co. | $682,931 | -0- | 34.34 | $234,519 | -0- |
| Sun Leasing Co. | 4,729,086 | $3,216,310 | 64.81 | 3,064,921 | $2,084,491 |
| 666 Leasing Co. | 4,072,539 | 2,167,684 | 64.98 | 2,646,336 | 1,408,561 |
| 670 Leasing Co. | 1,830,136 | 89,166 | 69.96 | 1,280,363 | 62,381 |
| 673 Leasing Co. | 1,627,381 | 374,085 | 55.98 | 911,008 | 209,413 |
| 675 Leasing Co. | 1,983,276 | 1,146,615 | 60.65 | 1,202,857 | 695,422 |
| 652 Leasing Co. | 794,330 | -0- | 73.42 | 583,197 | -0- |
| Kee Leasing Co. | 581,235 | 567,862 | 44.47 | 258,475 | 252,528 |
| 653 Leasing Co. | 814,727 | -0- | 89.11 | 726,003 | -0- |
| 667 Leasing Co. | 3,286,585 | 647,476 | 80.00 | 2,629,268 | 517,981 |
| Millcreek Leasing Co. | 830,407 | -0- | 4.26 | 35,375 | -0- |
| De Sun Shipping | 47,658 | -0- | 0.58 | 276 | -0- |
| Eastern Sun Shipping | 37,115 | -0- | 0.51 | 189 | -0- |
| NY Sun Shipping | 9,970,340 | 9,116,332 | 90.23 | 8,996,238 | 8,225,666 |
| NJ Sun Shipping | 143,340 | 127,135 | 3.76 | 5,390 | 4,780 |
| PA Shipping | 46,423 | -0- | 2.70 | 1,253 | -0- |
| Phil Sun Shipping | 10,809,958 | 10,361,281 | 29.54 | 3,193,262 | 3,060,722 |
| Western Sun Shipping | 50,003 | -0- | 0.00 | -0- | -0- |
| Sun Transport, Inc. | 3,650,045 | 3,550,205 | 25.99 | 948,647 | 922,698 |
| Sun Note Co. | 31,066,253 | -0- | 91.39 | 28,391,449 | -0- |
| North Sea Oil Co. | 65,897 | -0- | 34.77 | 22,912 | -0- |
| Totem Ocean Trailer | 46,949 | -0- | 49.39 | 23,188 | -0- |
| Total | 77,166,614 | 31,364,151 | | 55,155,126 | 17,444,643 |

| 1983 | Interest expense | Net interest expense | Asset ratio percent | Interest apportioned to foreign source income | |
|---|---|---|---|---|---|
| | | | | No Netting | Netting |
| 650 Leasing Co. | $612,220 | -0- | 27.22 | $166,646 | -0- |
| Sun Leasing Co. | 4,736,241 | $3,154,840 | 63.17 | 2,991,883 | $1,992,912 |
| 666 Leasing Co. | 4,084,197 | 2,376,712 | 53.36 | 2,179,328 | 1,268,214 |
| 670 Leasing Co. | 1,756,214 | 617,207 | 71.74 | 1,259,908 | 442,784 |
| 672 Leasing Co. | 714,282 | 82,784 | 57.18 | 408,426 | 47,336 |
| Kee Leasing Co. | 504,412 | 497,647 | 43.41 | 218,965 | 216,029 |
| 653 Leasing Co. | 736,315 | 77,583 | 67.56 | 497,454 | 52,415 |
| 667 Leasing Co. | 3,160,356 | 1,670,995 | 83.00 | 2,623,095 | 1,386,926 |
| Millcreek Leasing Co. | 742,214 | -0- | 5.85 | 43,420 | -0- |
| NY Sun Shipping | 9,849,306 | 9,122,147 | 83.33 | 8,207,427 | 7,601,485 |
| NJ Sun Shipping Co. | 208,102 | -0- | 1.97 | 4,100 | -0- |
| Phil Sun Shipping | 10,688,995 | 9,833,854 | 29.29 | 3,130,807 | 2,880,336 |
| Texas Sun Shipping | 33,963 | -0- | 4.56 | 1,549 | -0- |
| Tropic Sun Shipping | 474,700 | -0- | 27.47 | 130,400 | -0- |
| Sun Transport, Inc. | 2,644,781 | 1,664,584 | 20.58 | 544,296 | 342,571 |
| Heleasco Fifteen | 1,444,639 | 1,197,778 | 80.91 | 1,168,857 | 969,122 |
| Sun Note Co. | 25,667,812 | -0- | 92.67 | 23,786,361 | -0- |
| Total | 68,058,749 | 30,296,131 | | 47,362,922 | 17,200,130 |

| 1984 | Interest expense | Net interest expense | Asset ratio percent | Interest apportioned to foreign source income | |
|---|---|---|---|---|---|
| | | | | No netting | Netting |
| Kee Leasing Co. | $408,197 | $397,659 | 17.77 | $72,537 | $70,664 |
| 666 Leasing Co. | 4,083,327 | 1,874,164 | 33.48 | 1,367,098 | 627,470 |
| 670 Leasing Co. | 1,669,360 | 299,856 | 48.22 | 804,965 | 144,591 |
| 650 Leasing Co. | 536,038 | -0- | 6.90 | 36,987 | -0- |
| 652 Leasing Co. | 613,066 | -0- | 38.08 | 233,456 | -0- |
| 653 Leasing Co. | 636,635 | -0- | 25.12 | 159,923 | -0- |
| 667 Leasing Co. | 3,018,359 | 1,406,484 | 37.98 | 1,146,373 | 534,183 |
| Sun Leasing Co. | 4,689,864 | 2,645,034 | 44.68 | 2,095,431 | 1,181,801 |
| NY Sun Shipping | 9,712,823 | 9,180,293 | 86.91 | 8,441,414 | 7,978,593 |
| Phil Sun Shipping | 10,551,646 | 9,875,526 | 35.37 | 3,732,117 | 3,492,974 |
| Tropic Sun Shipping | 644,883 | -0- | 12.02 | 77,515 | -0- |
| Sun Transport, Inc. | 3,091,754 | 3,056,531 | 16.87 | 521,579 | 515,637 |
| Sun Oil Trading Co. | [1]627,633 | -0- | 0.00 | -0- | -0- |
| Sun Note Co. | 25,854,099 | -0- | 93.06 | 24,059,825 | -0- |
| North Sea Sun Oil Co. | 7,681,288 | 5,485,009 | 96.36 | 7,401,689 | 5,285,355 |
| Total | 73,818,972 | 34,220,556 | | 50,150,909 | 19,831,268 |

[1] See p. 9, supra

1986 No netting

| | Gross income | Foreign GI | Asset ratio percent | Interest expense | Gross income ratio percent [2] | §1.861-8(e) (2)(vi)(A) | §1.861-8(e) (2)(vi)(B)(1) | §1.861-8(e) (2)(vi)(B)(2) | Interest apportioned |
|---|---|---|---|---|---|---|---|---|---|
| Kee Leasing Co. | $2,013,346 | $260,455 | 4.71 | $213,410 | 12.94 | $27,608 | – | – | $27,608 |
| 666 Leasing Co. | 7,082,756 | 3,172,987 | 18.63 | 3,907,731 | 44.80 | 1,750,615 | – | – | 1750,615 |
| 670 Leasing Co. | 3,533,401 | 1,496,424 | 42.66 | 1,468,580 | 42.35 | 621,956 | – | – | 621,956 |
| 650 Leasing Co. | 2,038,955 | 954,294 | 0.00 | 404,732 | 46.80 | 189,427 | – | – | 189,427 |
| Sun Leasing Co. | 6,194,365 | 2,679,882 | 0.00 | 4,532,004 | 43.26 | 1,960,691 | – | – | 1,960,691 |
| Millcreek Leasing Co. | [1]305,752 | -83,676 | 0.53 | 435,448 | 0.00 | – | $1,154 | – | 1,154 |
| Tropic Sun Shipping | 3,986,919 | 1,501,298 | 2.73 | 644,829 | 37.66 | 242,814 | – | – | 242,814 |
| Sun Transport, Inc. | 79,520,790 | 21,932,881 | 20.91 | 2,356,829 | 27.58 | 650,044 | – | – | 650,044 |
| Sunoco Overseas, Inc. | -108,199 | 290,314 | 0.00 | 211,438 | 100.00 | – | – | $105,719 | 105,719 |
| Sun Refining & Marketing Co. | 672,597,605 | 1,095,517 | 20.27 | 44,588,973 | 0.16 | – | 4,519,092 | – | 4,519,092 |
| Sun Oil Trading Co. | 13,481,454 | 4,673,000 | 0.00 | 549,406 | 34.66 | 190,437 | – | – | 190,437 |
| Sun Co., Inc. | 760,884,991 | 23,864,572 | 6.47 | 157,687,537 | 3.14 | – | [3]5,097,676 | – | [3]5,097,676 |
| Sun Oil Intl. | 19,593,916 | 6,769,393 | 34.60 | 7,190,703 | 34.55 | 2,484,276 | – | – | 2,484,276 |
| North Sea Sun Oil Co. | 36,565,327 | 36,394,917 | 97.00 | 28,050,064 | 99.53 | – | – | 27,629,313 | 27,629,313 |
| Claymont Investment Co. | 513,112,873 | 111,203 | 0.00 | 217,180,793 | 0.02 | 47,068 | – | – | 47,068 |
| Total | 2,120,804,251 | 105,113,461 | | 469,422,477 | | | | | 45,517,890 |

[1] Cannot reconcile this amount with the fact that this corporation realized interest income of $646,275 during 1986.

[2] Foreign source gross income divided by total gross income.

[3] It appears that this amount should be $5,101,192 (i.e., $157,687,537 x 6.47 percent x 50 percent).

1986 Netting

| | Gross income | Foreign GI | Asset ratio percent | Interest expense | Interest income | Net interest | Gross income ratio percent[4] | §1.861-8(e) (2)(vi)(A) | §1.861-8(e) (2)(vi)(B)(1) | §1.861-8(e) (2)(vi)(B)(2) | Interest apportioned |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kee Leasing Co. | $2,013,346 | $260,455 | 4.71 | $213,410 | $9,844 | $203,566 | 13.00 | $26,464 | – | – | $26,464 |
| 666 Leasing Co. | 7,082,756 | 3,172,987 | 18.63 | 3,907,731 | 736,783 | 3,170,948 | 50.00 | 1,585,474 | – | – | 1,585,474 |
| 670 Leasing Co. | 3,533,401 | 1,496,424 | 42.66 | 1,468,580 | 540,553 | 928,027 | 50.00 | 464,014 | – | – | 464,014 |
| 650 Leasing Co. | 2,038,955 | 954,294 | 0.00 | 404,732 | 130,367 | 274,365 | 50.00 | 137,183 | – | – | 137,183 |
| Sun Leasing Co. | 6,194,365 | 2,679,882 | 0.00 | 4,532,004 | 834,601 | 3,697,403 | 50.00 | 1,848,702 | – | – | 1,848,702 |
| Millcreek Leasing Co. | [1]305,752 | -83,676 | 0.53 | 435,448 | 662,752 | -0- | 0.00 | -0- | – | – | -0- |
| Tropic Sun Shipping | 3,986,919 | 1,501,298 | 2.73 | 644,829 | 1,148,919 | -0- | 44.92 | -0- | – | – | -0- |
| Sun Transport, Inc. | 79,520,790 | 21,932,881 | 20.91 | 2,356,829 | 646,275 | 1,710,554 | 27.81 | 475,659 | – | – | 475,659 |
| Sunoco Overseas, Inc. | -108,199 | 290,314 | 0.00 | 211,438 | 189,663 | 21,775 | 100.00 | – | – | 10,888 | 10,888 |
| Sun Refining & Marketing Co. | 672,597,605 | 1,095,517 | 20.27 | 44,588,973 | 23,675,379 | 20,913,594 | [5]0.14 | – | 2,119,593 | – | 2,119,593 |
| Sun Oil Trading Co. | 13,481,454 | 4,673,000 | 0.00 | 549,406 | 317,610 | 231,796 | 35.50 | 82,285 | – | – | 82,285 |
| Sun Company Inc. | 760,884,991 | 23,864,572 | 6.47 | 157,687,537 | 937,176 | 156,750,361 | 3.14 | – | [6]5,067,379 | – | [6]5,067,379 |
| Sun Oil Intl. | 19,593,916 | 6,769,393 | 34.60 | 7,190,703 | 12,824,523 | -0- | 54.58 | -0- | – | – | -0- |
| North Sea Sun Oil Co. | 36,565,327 | 36,394,917 | 97.00 | 28,050,064 | 1,784,106 | 26,265,958 | [7]99.51 | – | – | 25,871,969 | 25,871,969 |
| Claymont Investment Co. | 513,112,873 | 111,203 | 0.00 | 217,180,793 | 505,319,941 | -0- | 0.04 | -0- | – | – | -0- |
| Total | 2,120,804,251 | 105,113,461 | | 469,422,477 | 549,758,492 | 214,168,347 | | | | | 37,689,970 |

[1] Cannot reconcile this amount with the fact that this corporation realized interest income of $646,275 during 1986.

[4] Foreign source gross income divided by the excess of total gross income over interest income.

[5] It appears that this percentage should be 0.17 percent (i.e., $1,095,517 ÷ ($672,597,605 - $23,675,379)).

[6] It appears that this amount should be $5,070,874 (i.e., $156,750,361 x 6.47 percent x 50 percent).

[7] Interest income treated as foreign source income. Thus in computing the allocation ratio, 99.51 percent, interest income is removed from both the numerator and the denominator of the fraction (($36,394,917 - $1,784,106) ÷ ($36,565,327 - $1,784,106)).